IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON

_____

**DIANE SLAWSON WATTERS,**

    Plaintiff-Appellee,

Shelby Chancery No. D23808-2

# FILED

**October 19, 1999**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

Vs.                        C.A. No. 02A01-9810-CH-00306

**WILLIAM C. WATTERS,**

    Defendant-Appellant,

**and GENERAL MILLS, INC.,**

    Defendant.

_____

FROM THE SHELBY COUNTY CHANCERY COURT
THE HONORABLE FLOYD PEETE, JR., CHANCELLOR

Daniel D. Warlick of Nashville
For Appellee

James D. Causey and Jean E. Markowitz of Memphis
For Appellant

*AFFIRMED AND REMANDED*

Opinion filed:

**CONCURS:**
**DAVID R. FARMER, JUDGE**

**DISSENTS: (With Separate Opinion)**
**DAVIG G. HAYES, JUDGE**

This case, which is before us a second time, involves an attempt to modify a final decree of divorce. Defendant/Appellant, William G. Watters (Husband),[1] appeals the order of the trial court denying Husband's petition to modify final decree of divorce as to child support and alimony to be paid to Plaintiff/Appellee, Diane Slawson Watters (Wife).

After approximately fourteen years of marriage, Wife was awarded a divorce on grounds of inappropriate marital conduct by a final decree entered June 23, 1995. The decree, ***inter alia***, awarded Wife the marital residence and its accompanying indebtedness; gave Wife her separate property totaling $12,990.00 and Husband his separate property totaling $3,915.00; awarded marital property to Wife totaling approximately $326,000.00 which includes the marital residence, the General Mills Voluntary Investment Plan in Husband's name (401K) in the amount of $185,543.00, and the proceeds less capital gains tax realized from the exercise of certain General Mills stock options in the amount of $47,960.00; awarded Husband marital property totaling approximately $247,000.00 which includes certain General Mills' stock options ($75,593.00) and restricted stock options ($15,995.00) and his pension benefit with a present value of $139,423.00; ordered Wife responsible for marital debts in the amount of $13,346.00 and Husband responsible in the amount of $12,545.00; awarded custody of the minor child to Wife;[2] ordered Husband to pay $1,027.00 per month in child support plus 21% of his annual bonus, less appropriate deductions for income taxes and social security, and all private school tuition and expenses; ordered Husband to maintain medical insurance on Wife and child and be responsible for 50% of the uncovered medical expenses; ordered

Husband to pay Wife $1,900.00 per month in alimony for seven years or until her death or remarriage; ordered Husband to pay Wife's attorney's fees in the amount of $38,798.66; and ordered Husband to maintain a $200,000.00 insurance policy on his life with Wife as beneficiary for five years with the amount of coverage to then drop $20,000.00 per year for two years.[3]

On July 19, 1996, Husband filed a "Petition to Modify Final Decree of Divorce as to Child Support and Alimony." In the petition, Husband avers that there is a substantial change of circumstances in that the Memphis office of his employer has closed and relocated its principal place of business to Atlanta, Georgia. He avers that because he did not want to relocate to another state and forfeit a large portion of his time with his son, he has taken a job with another employer at a much lower salary. Due to this change of circumstances, Husband requests that his child support obligation and alimony obligation be reduced in conformity with his present income. Husband subsequently filed an amended petition wherein he submitted that Wife has obtained employment and is no longer in need of alimony.

On November 12, 1996, the matter was heard before a divorce referee pursuant to an Order of Reference. The divorce referee found that there has been a change of circumstances; that Husband is not willfully underemployed; that Husband is to remain responsible for fifty percent of the minor child's uncovered medical expenses; that monthly child support should be reduced to $804.00 with the difference from the amount Husband was previously paying to be paid into an educational account for the minor child; that Husband shall continue to be responsible for the minor child's private education expenses as an extraordinary expense; that Husband's alimony obligation is to be reduced to $1,000.00 per month; that the arrearage of alimony is not forgiven; that Husband shall continue to maintain Wife's medical insurance; and that Husband shall be responsible for 25 % of Wife's uncovered medical expenses for three years or until she graduates whichever is sooner.

Both parties appealed the referee's order, and after a hearing, the trial court entered an order on September 21, 1998, vacating the referee's order and reinstating the final decree of divorce.  In its order, the trial court found that there has been no substantial change in circumstances even though Husband's income is substantially less; that the decrease in income was voluntary in that Husband was offered a transfer with his company to Atlanta at the same rate he was making at the time of the divorce; that, although Husband states he remained in Memphis to be near his son, he has not participated in visitation in any way that could not have been done from Atlanta; that child support should remain the same, based on earning capacity since Husband was voluntarily underemployed; and that alimony should not be reduced.[4]

Husband has appealed and presents the following issues, as stated in his brief, for review:

> 1.  Whether the trial court erred in finding that there was no substantial change in circumstances and in failing to ascertain Husband's earning capacity.
>
> 2.  Whether the evidence presented at the referee's hearing supports the trial court's finding that the defendant is voluntarily underemployed.
>
> 3.  Whether the trial court erred in not reducing child support, alimony and the remaining obligations ordered in the final decree of divorce and in failing to forgive alimony arrearage.
>
> 4.  Whether the trial court erred in considering marital assets awarded at the time of the divorce in determining defendant's ability to pay ongoing support.

Since this case was tried by the trial court sitting without a jury, we review the case *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court.  Unless the evidence preponderates against the findings, we must affirm, absent error of law.  T.R.A.P. 13(d).

The crux of Husband's appeal is whether the trial court erred in refusing to reduce his child support obligation and alimony obligation.  The issues presented can be considered together.

Modification of an existing child support order is controlled by T.C.A. § 36-5-101(a) (Supp. 1998), which states, in pertinent part:

> In cases involving child support, upon application of either party, the court shall decree an increase or decrease of such allowance when there is found to be a significant variance, as defined in the child support guidelines established by subsection (e), between the guidelines and the amount of support currently ordered unless the variance has resulted from a previously court-ordered deviation from the guidelines and the circumstances which cause the deviation have not changed.

"For the purposes of defining a significant variance between the guideline amount and the current support order pursuant to T.C.A. § 36-5-101, a significant variance shall be at least 15% if the current support is one hundred dollars ($100.00) or greater per month and at least fifteen dollars ($15.00) if the current support is less than $100.00 per month." Tenn. Comp. R. & Regs. 1240-2-4-.02(3) (1994). However, "[s]uch variance would justify the modification of a child support order unless, in situations where a downward modification is sought, the obligor is willfully and voluntarily unemployed or underemployed." *Id*.

The guidelines direct trial courts to determine the amount of support required by the guidelines "based on a flat percentage of the obligor's net income." Tenn. Comp. R. & Regs. 1240-2-4-.03(2). However, where an obligor is "willfully and voluntarily unemployed or underemployed," rather than awarding child support based on an obligor's actual income, the trial court is required to award child support "based on a determination of [the obligor's] potential income, as evidence by [his or her] educational level and/or previous work experience." Tenn. Comp. R. & Regs. 1240-2-4-.03(3)(d).

As for alimony, T.C.A. § 36-5-101, which provides for spousal support, states, in pertinent part, that "on application of either party for spousal support, the court may decree an increase or decrease of such allowance only upon a showing of a ***substantial and material change of circumstances***." T.C.A. § 36-5-101(a)(1) (1996 & Supp. 1998) (emphasis added). Whether there has been a sufficient showing of a substantial and

material change of circumstances is in the sound discretion of the trial court. *Wilkinson v. Wilkinson*, 1990 WL 95571, at \*4 (Tenn. App. July 12, 1990) (citing *Jones v. Jones*, 784 S.W.2d 349, 352 (Tenn. App. 1989)).

The party seeking relief on the grounds of a substantial and material change in circumstances has the burden of proving such changed circumstances warranting an increase or decrease in the amount of the alimony obligation. *Seal v. Seal*, 802 S.W.2d 617, 620 (Tenn. App. 1990). The change in circumstances must have occurred since the entry of the divorce decree ordering the payment of alimony. *Elliot v. Elliot*, 825 S.W.2d 87, 90 (Tenn. App. 1991). Furthermore, the change in circumstances must not have been foreseeable at the time the parties entered into the divorce decree. *Id.* If the change in circumstances was anticipated or in the contemplation of the parties at the time they entered into the property settlement agreement, such changes are not material to warrant a modification of the alimony award. *Jones v. Jones*, 784 S.W.2d 349, 353 (Tenn. App. 1989).

The decision to modify the alimony obligation is factually driven and requires a careful balancing of several factors. *Cranford v. Cranford*, 772 S.W.2d 48, 50 (Tenn. App. 1989). The factors set forth in T.C.A. § 36-5-101(d), applicable to the initial grant of spousal support and maintenance, where relevant, must be taken into consideration in determining whether there has been a change in circumstances to warrant a modification of the alimony obligation. *Threadgill v. Threadgill*, 740 S.W.2d 419, 422-23 (Tenn. App. 1987).

While T.C.A. § 36-5-101(d) enumerates several factors for the court to consider, the need of the spouse receiving the support is the single most important factor. *Cranford*, 772 S.W.2d at 50. In addition to the need of the spouse receiving support, the courts most often take into consideration the ability of the obligor spouse to provide support. *Id.*

At the time the final decree was entered, Wife was forty-seven years of age, Husband was forty-four, and their minor child was thirteen. Husband was employed as a regional sales manager with General Mills, Inc. in Memphis with a net base salary of

approximately $4,890.47 per month along with a bonus he received each year. His gross income in 1994 was $135,254.00. During the parties' marriage, Wife was primarily a homemaker and student. At the time of the decree, Wife was pursuing her doctorate degree in counseling education with an expected graduation date in August 1998 with an estimated earning capacity between $35,000.00 and $50,000.00 after she had developed her practice over several years. Husband was in good health at the time while Wife had undergone a double mastectomy during the marriage.

Husband left his employment with General Mills, Inc. in 1995 when General Mills, Inc. closed its regional office in Memphis and made Atlanta its principal place of business. Husband was offered a lateral move to Atlanta or a severance package. Husband accepted the severance package because, according to Husband, he wanted to stay in the Memphis area for his son. After he left General Mills, Inc. and after an alleged extensive job search, Husband accepted a position with Display Arts, Inc. Husband asserts that while the salary is lower than his General Mills salary, it is the best offer he could find. At the time he filed the petition to modify, Husband was employed as president of Display Arts, Inc. with a yearly income of $65,000.00 and net pay of $3,367.16 per month. Husband filed an affidavit of monthly income and expenses which revealed a monthly deficit of $2,538.40.

Husband asserts that the trial court erred in not reducing his child support obligation by failing to apply the proper standard and failing to make the proper findings related to that standard. He states that the trial court is required to determine whether there has been a significant variance in determining whether child support should be modified, that the trial court failed to apply this standard, and that a significance variance exists warranting a modification of his child support obligation. Husband also disputes the trial court's finding that he was voluntarily underemployed. He contends that the mere fact that he chose to decline the lateral transfer to Atlanta should not be, in and of itself, grounds to find that he was voluntarily underemployed. He states that he did not refuse to take the transfer for his own personal pleasure, but out of his concern and desire to be near his son so he could not

only exercise his visitation rights but to be involved in his son's other activities. Husband contends that the internal change in General Mills, Inc. leading to his severance, his long and hard efforts to find a comparable position, his demonstrated willingness to support his child, and his desire to remain an active participant in his son's life do not support a finding of voluntary underemployment. He further submits that upon finding that he was voluntarily underemployed, the trial court erred in automatically assuming that Husband had the same earning capacity as before.

Husband also contends that the trial court erred in failing to reduce his alimony obligation in light of the fact that there has been a substantial and material change in circumstances impacting his ability to pay. He submits that based on his ability to pay, this Court should reduce his alimony obligation to $400.00 per month and terminate his remaining obligations for private school tuition, school-related expenses, and expenses related to Wife's insurance and uncovered medical expenses. He also asserts that the trial court erred in using his marital assets as a basis to determine he had the ability to pay alimony when it was his income that was the determining factor in initially awarding alimony, and when there was not sufficient proof to determine the current marital assets. Husband finally submits that the trial court erred in refusing to forgive the alimony arrearage under the circumstances of the case.

Wife, on the other hand, submits that the trial court did not err in finding that there was no substantial change in circumstances and in failing to ascertain Husband's earning capacity because his willful underemployment does not justify a finding of a substantial change in circumstances. Furthermore, she submits that there was sufficient evidence to support the finding that Husband was voluntarily underemployed when it was demonstrated that Husband's position was not terminated by his employer but was terminated by himself so that he would not have to drive from Atlanta to Memphis twice a month to visit with his son. Wife further submits that the trial court did not err in not reducing child support, alimony and the remaining obligations and in failing to forgive alimony arrearage because there was

a justifiable finding that there had been no substantial change in circumstances, that Husband was voluntarily underemployed, and that the rehabilitative alimony of a sum certain over a period of time was not subject to modification. Finally, Wife asserts that the trial court did not err in considering marital assets awarded at the time of the divorce in determining Husband's ability to pay.

From our review of the record, we find that the evidence does not preponderate against the trial court's finding that Husband is voluntarily underemployed. Husband voluntarily decided to leave his job. This is not a situation where Husband's job was being terminated or at jeopardy of being terminated. Rather, Husband had before him an opportunity to continue in the same position with the same salary. However, rather than pursue this avenue, Husband decided to leave his job without first securing employment at or near the same earning level. He did this in light of his obligations to his son and Wife. While Husband's contention that he wished to remain in Memphis to stay near his son is admirable, his first obligation is to provide support to his son and to Wife. The trial court found and we concur that Husband's visitation with his son would not be curtailed by his employment scheduled in Atlanta. Admittedly, Husband's ability to participate in some of his son's activities might have been affected, but this must be balanced with the need for support and maintenance. Husband is voluntarily underemployed, and the trial court was correct in not reducing his child support obligation. The trial court was also correct in imputing income to Husband based on his previous income at General Mills, Inc. since this is a good indicator of his earning potential and is authorized by the guidelines. *See* Tenn. Comp. R. & Regs. 1240-2-4-.03(3)(d). The trial court did not err in refusing to modify Husband's alimony obligation. While technically there is a change of circumstances, the change was brought about solely by Husband's voluntary actions. He should not be able to escape his obligations under such circumstances.

Accordingly, the order of the trial court is affirmed, and the case is remanded for such further proceedings as necessary. Costs of appeal are assessed against the

appellant.

_____

**W. FRANK CRAWFORD,
PRESIDING JUDGE, W.S.**

**CONCURS:**

_____

**DAVID R. FARMER, JUDGE**

**DISSENTS:**
**DAVID G. HAYES, JUDGE**