# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### November 5, 2001 Session

## JULIANN MORANDO v. WILLIAM MICHAEL MCGAHAN

**Direct Appeal from the Juvenile Court for Wilson County**
**No. 99JWC136      Charles P. Tatum, Judge**

---

### No. M2000-01551-COA-R3-JV - Filed January 15, 2002

---

This appeal arose after the trial court made its final determination on issues involving the support of the parties' minor child. Mother petitioned the trial court to establish parentage, to be awarded custody of the parties' child, and to establish other issues regarding the care of the child. At trial, Father conceded paternity and did not contest the custody issue. In making its child support award, the trial court based its decision on Father's new found employment. The court also set a payment schedule for the child support arrearage, determined that Father should claim the child as a dependent for tax purposes, split medical costs associated with the child's birth, and refused to award mother filing fees and attorney's fees. Mother contends that Father is voluntarily underemployed for purposes of child support and challenges several other decisions of the trial court. We reverse the court's decision in part, modify in part, affirm in part, and remand to the trial court for proceedings consistent with this opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Reversed in Part; Modified in Part; Affirmed in Part; and Remanded.**

DAVID R. FARMER, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and HOLLY K. LILLARD, J., joined.

Jeffrey Spark, Nashville, Tennessee, for the appellant, Juliann Morando.

Clark Lee Shaw, Nashville, Tennessee, for the appellee, William Michael McGahan.

### OPINION

On February 11, 1999, Juliann Morando gave birth to a child. Subsequently, Ms. Morando petitioned the court to declare that William Michael McGahan was the child's father and to determine other issues relative to the birth and care of the child. In turn, Mr. McGahan filed an answer and counter-petition, demanding a paternity test to establish the parentage of the child.

After a paternity test established that Mr. McGahan was the father of the child, the court held an initial hearing to establish custody, child support, and visitation. At the November 30, 1999

hearing, Mr. McGahan stipulated that Ms. Morando should have sole custody of the couple's child.[1] Mr. McGahan also testified that he had been employed by the Gannett Corporation until November 1999 as a technician. Further, Mr. McGahan stated that he earned $18.90 per hour while employed by the Gannett Corporation and that he worked forty hours per week. The reason he discontinued his employment at the Gannett Corporation was, Mr. McGahan stated, because he felt working with Ms. Morando, who also worked there, was having an adverse effect on his health. Mr. McGahan further testified that he was unemployed at the time of the hearing and was not presently seeking employment.

After reviewing Mr. McGahan's testimony, the record as a whole, and the statements of counsel, the court found that Mr. McGahan "voluntarily and without cause quit his job" at the Gannett Corporation. According to his salary at the Gannett Corporation, the court ordered that Mr. McGahan should pay Ms. Morando $122.00 per week in ***pendente lite*** child support, pending a final hearing of the case. This amount was in accord with the Child Support Guidelines. Additionally, the court set a date for the final hearing of this case. The purpose of the final hearing was to determine the issues of "current child support, child support arrearage, reimbursement of medical insurance costs, reimbursement of birthing costs, the child's surname, visitation, assessment of attorney's fees, and court costs."

The court held the final hearing on January 25, 2000. Ms. Morando testified that she paid $11.54 per week to provide medical insurance for the child. Further, Ms. Morando stated that outstanding medical bills associated with the birth of the child totaled $110.00. Ms. Morando stated that she worked at the Gannett Corporation, earning $11.47 per hour while working 40 hours per week.

Mr. McGahan testified that he remained unemployed. Mr. McGahan stated that he interviewed for one job where he expected to earn $10.00 per hour while working a forty hour week. Further, Mr. McGahan presented a newspaper advertisement for the position and stated that he expected to begin employment on January 31, 2000. Mr. McGahan also stated that he had not applied for any other positions. Finally, Mr. McGahan testified that he had a 401(k) plan with the Gannett Corporation with an approximate value of $40,000.

A final witness testified at the hearing. Jim Watson, employed in the Human Resource department at the Gannett Corporation, stated the Mr. McGahan was not a candidate for rehire. Mr. Watson testified that Mr. McGahan stated that he could not work with Ms. Morando. According to Mr. Watson, Mr. McGahan previously stated that if he worked with Ms. Morando, Mr. McGahan would "blow her head off."

As a result of the final hearing, the court found that Mr. McGahan would not earn his prior salary that was the basis for the ***pendente lite*** support. Therefore, the court ordered Mr. McGahan

---

[1] Pursuant to Rule 24(c) of the Tennessee Rules of Appellate Procedure, Ms. Morando filed a statement of the evidence to account for the events in this hearing, as well as for all other proceedings relevant to this appeal.

to pay Ms. Morando $68.37 per week in child support. The court based its order on Mr. McGahan's new job, where Mr. McGahan was to earn $1,733.33 per month in gross income. The court stated that the child support award was in accord with the Child Support Guidelines.

The court also ordered Mr. McGahan to reimburse Ms. Morando $11.54 per week for the child's medical insurance, or in the alternative, to provide similar coverage to the child at Mr. McGahan's own expense. Additionally, the court found Mr. McGahan in arrears regarding child support. The court determined the amount of arrearage to be $5,124.00. The court based the amount of arrearage on the ***pendente lite*** support as previously set by the court. As payment for the arrearage, the court ordered Mr. McGahan to pay Ms. Morando $10.00 per week. Further, the court ruled that Mr. McGahan should be entitled to claim the child as a tax deduction.

The court determined that each party should bear the cost of their attorney's fees. Also, the court ruled that the Mr. McGahan and Ms. Morando should split the unpaid birthing costs equally, and awarded Ms. Morando a judgment in the amount of $55.00 which represented Mr. McGahan's portion of those costs. Finally, the court determined Mr. McGahan's visitation schedule with the child.

Ms. Morando appeals the trial court's decision. The issues, as stated by Ms. Morando, are as follows:

I. Whether the trial court erred in reducing appellee's child support payments to the custodial parent?

II. Whether the trial court erred in allowing appellee non custodial parent to claim the parties' child as a tax deduction each year?

III. Whether the trial court erred in allowing appellee to pay retroactive child support judgment of $5,124.00 in weekly increments of $10.00 over a period of ten years?

IV. Whether the trial court erred in denying appellant prevailing party reasonable attorney's fees?

V. Whether the trial court erred in requiring appellant prevailing party to pay the filing fee and other costs in this cause?

VI. Whether the trial court erred in equally dividing the medical costs associated with the birth of the parties' child?

In response to Ms. Morando's appeal, Mr. McGahan raises two additional issues for our consideration. These issues, as stated by Mr. McGahan, are as follows:

> I. [Whether] the appellee is entitled to attorney's fees on appeal in this matter.
>
> II. [Whether] the appellee is entitled to attorney's fees, costs, and expenses because of this frivolous appeal.

To the extent these issues involve questions of fact, our review of the trial court's ruling is *de novo* with a presumption of correctness. Tenn. R. App. P. 13(d). We may not reverse the trial court's factual findings unless they are contrary to the preponderance of the evidence. *Id.* With respect to the court's legal conclusions, our review is *de novo* with no presumption of correctness. *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000).

In her first issue, Ms. Morando asserts that the trial court erred by basing the final child support award on Mr. McGahan's new found employment. Ms. Morando contends that court should not have altered the *pendente lite* support that the court ordered in the November 30, 1999 hearing. In addition to other arguments on the issue, Ms. Morando maintains that Mr. McGahan is "intentionally and purposefully unemployed or underemployed" for the purpose of determining the proper amount of child support.

The issue of willful and voluntary underemployment can arise at any time during child support proceedings, whether in the initial phase or in subsequent modification hearings. *Ralston v. Ralston*, No. 01A01-9804-CV-00222, 1999 WL 562719, at * 3 (Tenn. Ct. App. Aug. 3, 1999) (*no perm. app. filed*). Whether an obligor is willfully and voluntarily underemployed is a question of fact, and the trial court has considerable discretion in its determination. *Willis v. Willis*, No. W2000-01613-COA-R3-CV, 2001 WL 687067, at *2 (Tenn. Ct. App. June 18, 2001), *perm. app. denied* (Tenn. Oct. 1, 2001)(citing *Brooks v. Brooks*, 992 S.W.2d 403, 409 (Tenn. 1999) (Birch, J. dissenting)). When a trial court must determine whether a parent is willfully and voluntarily underemployed, the reasons for an obligor parent's decision to accept lower paying employment are relevant. *Ralston*, 1999 WL 562719, at * 3. In making its determination, the trial court must consider the party's past and present employment and whether the party's choice to accept a lower paying job was reasonable and made in good faith. *Ralston*, 1999 WL 562719, at *3.

In making any determination of willful and voluntary underemployment, it is important to determine whether the leaving of previous employment was voluntary or involuntary. *Ralston*, 1999 WL 562719, at * 4. When a party with child support obligations voluntarily leaves their employment and chooses to accept a job which provides significantly less income, courts are more inclined to find willful and voluntary underemployment. *Willis*, 2001 WL 687067, at *2 (citing *Brooks*, 992 S.W.2d at 407). In addition, courts may consider a party's course of action and decision-making after leaving their previous employment. *Ralston*, 1999 WL 562719, at *4. Accordingly, it is important for courts to examine a party's efforts to replace lost income after the termination of their previous employment. *Id.* at *4-5.

-4-

In the present case, the record establishes that Mr. McGahan was voluntarily underemployed. At the November 30, 2000 hearing, the trial court found that Mr. McGahan "voluntarily and without cause" left his job at the Gannett Corporation. The record indicates that Mr. McGahan left his job at the Gannett Corporation with the knowledge that he would be responsible for supporting the child and with no other job prospects. This finding alone indicates that Mr. McGahan was underemployed when the trial court determined the issue of child support at the final hearing. Additionally, Mr. McGahan, knowing that he would have to support the child, failed to obtain subsequent employment for almost three months after he left the Gannett Corporation. In fact, Mr. McGahan admitted that he was not even seeking employment as of the November 30, 2000 hearing, and at the January 25, 2001 hearing, Mr. McGahan stated that he had only applied for one job which he was slated to begin on January 31, 2001. These actions by Mr. McGahan are precisely the type to be considered in determining whether Mr. McGahan was underemployed. From our view of the record, it is clear that Mr. McGahan was not making a good faith or a reasonable effort to replace his wages from the Gannett Corporation. Therefore, because Mr. McGahan voluntarily left his employment and failed to even attempt to find employment at a comparable salary, Mr. McGahan was voluntarily underemployed at the time of the final hearing in this matter.

Because we have determined that Mr. McGahan was voluntarily underemployed at the time of the final hearing held on January 25, 2001, Mr. McGahan's child support obligation must be determined on remand. In calculating Mr. McGahan's proper child support obligation, the trial court must consider Mr. McGahan's potential income rather than his actual income. Tenn. Comp. R. & Regs. 1240-2-4-.03(3)(d) (2001); *Watters v. Watters*, 22 S.W.3d 817, 820-21 (Tenn. Ct. App. 1999). In accord with the child support guidelines, Mr. McGahan's potential income is to be based upon his educational level and/or previous work experience.[2] *Id.*

Ms. Morando contends in her second issue that the trial court erred by allowing Mr. McGahan to claim the child as a dependent on his yearly tax return. Decisions of the trial court regarding the allocation of exemptions for minor children are discretionary. *Barabas v. Rogers*, 868 S.W.2d 283, 289 (Tenn. Ct. App. 1993). Further, the courts should consider the tax consequences of child support orders. *Id.*

In this case, the court heard testimony regarding the income and financial situation of each party. In its order, the court stated that Mr. McGahan should be permitted to deduct the child as a dependent because Mr. McGahan would pay child support to Ms. Morando. Though a trial court should not base an order granting an exemption to a non custodial parent on that fact alone, our review of the record, especially in light of our holding that Mr. McGahan was underemployed, fails to illustrate that the trial court abused its discretion by granting the tax exemption to Mr. McGahan.

---

[2]Mr. McGahan's potential income is a question of fact that must be supported by a proper evidentiary basis. *Willis*, 2001 WL 687067, at *3; *Eatherly v. Eatherly*, No. M2000-00886-COA-R3-CV, 2001 WL 468665, at *11 (Tenn. Ct. App. May 4, 2001) (*no perm. app. filed*). We are aware that courts will sometimes adopt one's previous income as an accurate measure of one's potential income, especially in those cases where the obligor voluntarily discontinued their prior employment. *Eatherly*, 2001 WL 468665, at *11 n.10. We decline to take that route in the present case and remand the issue to the court for further fact finding on the issue.

Therefore, we affirm the trial court's decision allowing Mr. McGahan to claim the parties' child as a yearly tax deduction.

Ms. Morando's third issue concerns the trial court's decision allowing Mr. McGahan to pay the child support arrearage in weekly increments of ten dollars. The child support guidelines govern the payment of arrearage in cases where initial child support is being set. Tenn. Comp. R. & Regs. 1240-2-4-.04(1)(e)(2001). The guidelines provide that "[a]n amount should be included in the order to reduce the arrears judgment on a monthly basis within a *reasonable time*." *Id.* (emphasis added).

In this case, according to the trial court's repayment plan, it would take almost ten years for Mr. McGahan to pay the child support arrearage.[3] In light of the trial court's finding that Mr. McGahan possessed a 401(k) plan with a value of approximately $40,000, the repayment plan imposed by the court was not reasonable. Mr. McGahan has the present ability to satisfy the arrearage with the assets in the 401(k) plan. Therefore, the judgment of the trial court concerning the payment of the child support arrearage is modified to require Mr. McGahan to pay the arrearage in a lump sum.

In Ms. Morando's fourth issue, she contends that the trial court erred by denying her request for attorney's fees in this action. In cases involving child custody, the trial court is authorized to award attorney's fees under section 36-5-103(c) of the Tennessee Code. The allowance of attorney's fees in such cases is largely within the sound discretion of the trial court. *Sherrod v. Wix*, 849 S.W.2d 780, 785 (Tenn. Ct. App. 1992). Absent an abuse of discretion, reviewing courts will not interfere with a trial court's ruling regarding this matter. *Garfinkle v. Garfinkle*, 945 S.W.2d 744, 748 (Tenn. Ct. App. 1996).

In the present case, the trial court heard evidence regarding the relative incomes and assets of the parties. After hearing this evidence, the court required each party to be responsible for their own attorney's fees in the case. After reviewing the record, we find no abuse of discretion on the part of the trial court regarding attorney's fees. Therefore, we affirm the trial court's ruling on the issue of attorney's fees.

Ms. Morando's fifth issue concerns whether the trial court erred by denying her request to require Mr. McGahan to pay the filing fees and other costs associated with the hearing. Additionally, Ms. Morando's contends in her sixth and final issue that the trial court erred by equally dividing the medical costs associated with the birth of the parties' child. Both of these issues rest within the sound discretion of the trial court. *See* Tenn. Code Ann. § 36-2-314 (2001) (stating that "[t]he clerk's fee for services in an application for an order of parentage shall be fifty ($50.00) plus any litigation tax, if applicable to be paid by the party petitioning subject to final assessment by the

---

[3]The trial court determined the arrearage to be $5,124.00 based on Mr. McGahan's prior income at the Gannett Corporation. The court ordered Mr. McGahan to pay ten dollars per week to satisfy the arrearage. Over the course of a year, therefore, Mr. McGahan would pay $520.00. The total arrearage, $5,124.00, divided by $520, results in 9.85 years to satisfy the arrearage under the trial court's repayment plan.

court."); Tenn. Code Ann. § 36-2-311(a)(13) (stating that an order for parentage shall include a "[d]etermination of liability for a mother's reasonable expenses for her pregnancy, confinement and recovery to either or both parties."). After reviewing the record, we hold that the trial court did not abuse its discretion in deciding these issues. Accordingly, we affirm the trial court's decision regarding filing fees and medical costs.

In light of our decision in this case, we find Mr. McGahan's issues to be without merit. Mr. McGahan is not entitled to attorney's fees for this appeal, nor is Mr. McGahan entitled to damages for a frivolous appeal.

Ms. Morando requests that we order Mr. McGahan to pay her attorney's fees for this appeal. It is within our discretion whether to award attorney's fees for an appeal. Tenn. Code Ann. § 36-5-103(c) (2001). Attorney's fees are appropriate in child support cases when one parent must appeal a case on behalf of a minor child in order to secure the child's financial well being. ***Ragan v. Ragan***, 858 S.W.2d 332, 333-34 (Tenn. Ct. App. 1993). Here, attorney's fees are appropriate for the appeal of this case, and the custodial spouse should not have to bear those expenses. Therefore, we grant Ms. Morando's request for attorney's fees for this appeal. On remand, the trial court shall determine the amount of attorney's fees reasonably incurred for this appeal and enter the appropriate judgment.

Accordingly, we reverse the decision of the trial court regarding the child support award, modify the court's decision pertaining to the child support arrearage, and affirm the remainder of the trial court's opinion. We remand the cause for further proceedings consistent with this opinion. The costs of this appeal are taxed to the appellee, William Michael McGahan, for which execution may issue if necessary.

 

_____
DAVID R. FARMER, JUDGE