IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs May 3, 2005

## CATHY LEE BARNES WILLIAMS v. RODNEY LEE WILLIAMS

**Appeal from the Circuit Court for Davidson County**
**No. 93D-961     Marietta Shipley, Judge**

_____

**No. M2004-00070-COA-R3-CV - Filed August 25, 2005**

_____

Former wife, Cathy Williams, appeals the action of the trial court in reducing the alimony *in futuro* obligation of former husband, Rodney Williams, from $4,000 per month to $2,000 per month based on a finding that a substantial and material change in circumstances sufficient to justify the decrease had occurred.  The judgment of the trial court is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

WILLIAM B. CAIN, J., delivered the opinion of the court, in which WILLIAM C. KOCH, JR., P.J., M.S. and PATRICIA COTTRELL, J., joined.

Tyree B. Harris, Alfred H. Knight, Nashville, Tennessee, for the appellant, Cathy Lee Williams.

Phillip Robinson, Philip E. Smith, Nashville, Tennessee, for the appellee, Rodney Lee Williams.

## OPINION

For the second time, post-divorce proceedings are before this Court on petitions by Rodney Williams to reduce his alimony obligation to Cathy Williams upon allegations that a substantial and material change in circumstances had occurred justifying such a reduction.  The relevant facts and the appellate disposition of the first of these petitions is reflected in *Cathy Lee Barnes Williams v. Rodney Lee Williams*, 2000 WL 852121 (Tenn.Ct.App. June 27, 2000) (perm. app. denied Dec. 18, 2000).  Therein it is said:

Appellee Rodney Lee Williams ("Husband") and Appellant Cathy Lee Barnes Williams ("Wife") were divorced on January 9, 1995, after twenty-one years of marriage.  The parties had two children, Rodney Lee Williams, Jr. ("Rodney") and Alesha Lee Williams ("Alesha"), twins, who were twenty years old at the time of the divorce.  Rodney was in college at The University of Tennessee at Knoxville.  Alesha, who had a baby, lived at home with Wife.  Wife earned approximately

$20,000 a year from a part-time job as a pharmaceutical salesperson. Husband earned approximately $143,419.13 per year as a sales manager at a car dealership.

Prior to the divorce, the parties entered into a marital dissolution settlement agreement ("agreement"). This agreement, with the exception of one provision relating to life insurance, was ultimately incorporated into the parties' final decree of divorce. The agreement provided for spousal support as follows:

> The parties acknowledge and agree that the husband has the ability to pay and the wife has the present and future need for spousal support until her death or remarriage, based, in part, on the relevant criteria set forth at T.C.A. 36-5-101(d)(1)(A-L), including, but not limited to, the duration of the marriage and the relative future health and earning capacities of the parties.
> Therefore, the parties agree that, in the event of the separation and/or divorce, the husband shall pay the wife the total cash sum of not less than Four Thousand Dollars ($4,000) per month as alimony *in futuro*, until the death or remarriage of the wife.

The agreement provided that the parties' liquid assets be divided 60% to Wife and 40% to Husband. The agreement contained no provision on the payment of tuition and school expenses for either child. After the divorce, Wife assumed the responsibility of paying Rodney's college tuition and expenses, of supporting Alesha and the parties' grandchild, and of assisting Alesha in completing her training as a licensed practical nurse.

On January 20, 1998, Husband filed a petition to modify the award of alimony, arguing that there had been a substantial and material change in circumstances sufficient to justify a decrease in his alimony obligation. A hearing was held on the petition on January 20, 1999. Husband argued that Wife had increased her income by working full-time instead of part-time, had saved from her earnings and had earned interest on her savings. He also argued that Wife's expenses had decreased after Rodney's graduation from college, and noted that Alesha was expected shortly to complete her nursing education.

At trial, Wife acknowledged that in 1998 she had grossed $61,778 from her full-time position as a pharmaceutical salesperson, and that in 1997 she had earned approximately $7500 in interest on her savings account. She did not dispute that she no longer had the expense of Rodney's college tuition.

Husband also argued that his ability to pay the agreed-upon level of alimony had decreased, due to the additional expenses he had incurred with the birth of a new child, and his recent decline in income. Husband testified that his income had been $165,149 in 1995, $142,221 in 1996, $122,722 in 1997, and $90,472 in 1998. Husband testified that he was unemployed at the time of the hearing. He

acknowledged, however, that his new wife earned between $50,000 and $60,000 per year, that he and his wife had reported a combined income of $174,088 in 1997, and that he had been able to meet his alimony obligations to date without having to alter his lifestyle. He admitted that he had no immediate plans to sell his $290,000 home, either of his two vehicles, or his boats.

On February 3, 1999, the trial court issued an order reducing Husband's alimony obligation to $2500 per month. The trial court found that Wife's increase in income, combined with the decrease in her expenses due to the son's graduation from college and the daughter's maturation, was a material change in circumstances justifying the decrease in alimony. The trial court did not base its finding of a substantial and material change in circumstances on Husband's current unemployment, stating that it assumed that Husband would quickly find another job, and that his income would remain at essentially the level it was at the time of the divorce. The trial court's order states:

> It appears to the Court from an examination of the records, evidence presented to the Court, and the testimony of the parties that there has been a material and substantial change in the circumstances of Cathy Williams that would warrant a reduction in alimony payable to her. The Court find [sic] such material and substantial changes in circumstances to be a substantial increase in the income of Cathy Williams and a substantial decrease in the expenses of Cathy Williams, particularly the graduation of the parties' son from college and the maturation of the parties' daughter who is nearing completion of her education.

From this order, Wife now appeals.

*Williams v. Williams*, 2000 WL 852121 *1-2. (emphasis added) (footnote omitted).

This Court reversed the trial court's reduction in alimony and re-instated the $4,000 per month obligation, holding that an increase in the income of an alimony recipient was not enough without more to warrant a reduction in alimony. We held that neither one child's graduation from college nor the maturity of the other child was an unanticipated change of circumstances, and that Mr. Williams's increased financial responsibilities of a second marriage were voluntarily assumed. This Court held that, "The trial court stated that it assumed, from Husband's employment history, that Husband's unemployment was temporary, and that he would soon be earning substantially the same amount as he earned at the time of the divorce. The evidence does not preponderate against this finding." *Williams*, 2000 WL 2582121 at *5.

On February 2, 2001, Mr. Williams filed a second Petition for the Reduction of Alimony. In this Petition which is the subject of the present appeal he alleged:

The Petitioner would state that since entry of the Order by this Honorable Court on February 3, 1999, and as modified by the Court of Appeals, that there has been a substantial and material change in circumstances warranting a reduction in the amount of alimony that he is to pay per month. As was set forth earlier herein, the Court of Appeals, at least in part, based its decision on the finding of this Honorable Court that the Petitioner's unemployment was temporary and that he would be in a similar job making similar money in the near future. The Petitioner would submit that although he is employed at the present time, he is not making "substantially the same amount" of money that he was making at time the Final Decree of Divorce was entered. Nearly two years after entry of the Order, the Petitioner is unable to generate substantially the same amount of income that he was able to generate at the time of the entry of the Final Decree of Divorce. The Petitioner would submit that time has proven that the finding of this Honorable Court that Petitioner would find a job making "substantially the same amount" of money was misplaced. In fact, your Petitioner would submit that he has worked in the car business for almost twenty-five years and that car sale business is now in decline and that it is impossible for him to generate income which is substantially the same as what he was making at the time of entry of the final decree. The Petitioner would submit this substantial and material change in circumstances warrants a decrease and/or termination of the four-thousand-dollars per month ($4,000.00) alimony *in futuro* award.

On March 22, 2001, Cathy Williams answered the Petition denying the essential allegations and asserting affirmative defenses which included *res judicata* and a deteriorating medical condition. While the February Petition and March Answer were still pending, Cathy Williams filed a motion for the trial court to enter a final judgment in compliance with the orders issued by the Court of Appeals following the mandate from this Court. The trial court granted Cathy Williams's Motion and entered a Final Order, which provided in pertinent part:

This Honorable Court having reviewed the record, heard statements of respective counsel and received testimony of the Defendant, affirmatively finds that:

– In compliance with orders issued by the Honorable Court of Appeals of Tennessee, at Nashville, entered June 27, 2000, (Application for Permission to Appeal having been denied by the Honorable Supreme Court of Tennessee, at Nashville, on December 18, 2000) the original alimony award should be reinstated, in the amount of $4,000.00 per month, due and payable by Mr. Williams to Ms. Williams, by the 5th day of each month, retroactively to February 1999; Ms. Williams should be awarded a reasonable amount toward her costs and attorney fees incurred in the appeal of this cause; and all court costs should be taxed against Mr. Williams.

-4-

– In accordance with the agreement reached by the parties, Ms. Williams should have a judgment as against Mr. Williams in the total sum of $44,000.00, said judgment representing $36,000.00 owed to Ms. Williams in alimony arrearage from February 1999 through January 2001, and $8,000.00 owed to her for costs and attorney fees incurred by Ms. Williams in the appeal of this case. The unpaid balance of this total sum should bear interest at the statutory rate of 10% per annum until the total judgment has been fully satisfied.

– Beginning April 1, 2001, this total judgment should be satisfied at the rate of $375.00 per month, with a balloon payment every January 15th in an amount sufficient to total an annual payment of $10,000.00, until such time as the total judgement and accrued interest have been paid in full.

– Mr. Williams should prepare a list of all of his assets, whether they be solely or jointly owned, and his best estimate as to their respective values, and this list should be attached to this Order as Exhibit 1.

– Until such time as the fore referenced judgment, and all interest related thereto, has been paid in full, Ms. Williams should have a judgment lien on all of Mr. Williams' assets.

– In the event that Mr. Williams defaults on his payments by January 15th of any year, then, on January 16th Ms. Williams should be allowed to execute on the judgment against any or all of Mr. Williams' assets. Ms. Williams should not be allowed to execute on the judgment before January 16, 2002.

– All costs related to this cause should be taxes [sic] against Mr. Williams.

Having so found:

**IT IS THEREFORE ORDERED, ADJUDGED AND DECREED** that the orders issued by the Honorable Court of Appeals of Tennessee, at Nashville, on June 27, 2000 are hereby adopted, ratified and made a final order of this Honorable Court, in pertinent part, as follows:

The original alimony award to Ms. Williams is hereby reinstated, retroactively to February 1999, in the monthly sum of FOUR THOUSAND DOLLARS ($4,000.00), due and payable by Mr. Williams to Ms. Williams by no later than the 5th day of each month. Ms. Williams is hereby awarded a reasonable

sum, as set out below, for her costs and attorney fees incurred in the appeal of this cause. All court costs are hereby taxed against Mr. Williams.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that, per the agreement of the parties, the Plaintiff/Respondent, CATHY LEE BARNES WILLIAMS, is hereby awarded a judgment against the Defendant/Petitioner, RODNEY LEE WILLIAMS, in the total sum of FORTY-FOUR THOUSAND DOLLARS ($44,000.00) said sum representing $36,000.00 in alimony arrearage owed by Mr. Williams to Ms. Williams for the time period extending from February 1999 through January 2001, and $8,000.00 toward the costs and attorney fees incurred by Ms. Williams in the appeal of this case. This judgment shall bear interest at the statutory rate of TEN PERCENT (10%) per annum until paid in full.

Notwithstanding the new Petition to Modify Alimony, filed by Mr. Williams on February 2, 2001, Mr. Williams' obligation to resume his original alimony payments in the amount of $4,000.00 per month shall commence retroactively to February 2001, based upon the understanding of the parties that the amount of the arrearage judgment agreed upon herein does not relieve Mr. Williams of any arrearages accumulated after January 31, 2001.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that Mr. Williams shall prepare a complete list of all of his assets, together with his good faith estimate as to the value of each asset, whether those assets are presently held or owned solely or jointly, and this list shall be attached to this Final Order as Exhibit 1.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that the fore referenced $44,000.00 judgment shall be satisfied at the monthly rate of THREE HUNDRED SEVENTY-FIVE DOLLARS ($375.00) with an annual balloon payment made by January 15th of each year such that Mr. Williams has paid Ms. Williams $10,000.00 per year by the 15th day of January each year, the first payment due and owing on April 1, 2001, and all subsequent payments due and owing by the first day of each month thereafter. In the event that Mr. Williams defaults on his payments, as set out herein, then Ms. Williams shall have the right to execute on the judgment as against any and all assets held solely or jointly by Mr. Williams. Such execution proceedings may not be initiated prior to January 16, 2002.

On June 20, 2002, Rodney Williams amended his Petition to Modify Alimony to add an assertion that Cathy Williams no longer had a need for $4,000 per month in permanent alimony. The trial court conducted a hearing on July 31, 2002, and entered its judgment on September 4, 2002:

The Court finds there has been a substantial and material change in circumstances of the parties since entry of the Final Decree of Divorce. The Court

-6-

finds that the Petitioner's earning capacity has decreased through no fault of his own from approximately one-hundred fifty-thousand ($150,000.00) dollars per year to ninety-thousand ($90,000.00) dollars per year. The Court further finds that the Petitioner has been forced to change his lifestyle. The Petitioner has no assets other than his home, which is jointly owned with his current wife. The Petitioner has sold his boat and his sea-doo in order to pay alimony. The Petitioner is unable to contribute to a college fund for his minor child. The Petitioner and his family have been forced to stop taking vacations. The contribution of the Petitioner's current wife to her retirement through her employment is minimal. The Petitioner and his family do not dine out as often as they used to. Further, the Petitioner is unable to contribute any funds towards his retirement. The Court further finds that the Petitioner has increased the value of his assets awarded in the divorce from one-hundred seventeen-thousand ($117,000.00) dollars to one-hundred sixty-seven-thousand ($167,000.00) dollars, with a good portion of said value contained in a joint asset that he owns with his current wife, Cindy Williams.

The Court further finds that there has been a substantial and material change in circumstances on the part of the Respondent in that the Respondent's income has increased from thirty-three thousand ($33,000.00) dollars per year to ninety-thousand ($90,000.00) dollars per year. Additionally, the Court finds that the parties adult daughter and her minor child have resided with the Respondent at almost all times since entry of the Final Decree of Divorce. Further, the Respondent has contributed monies on a regular basis to the parties adult daughter as well as providing her a place to live rent-free. The Respondent has increased the value of her asset from one-hundred seventy-thousand ($170,000.00) dollars at the time of the divorce to four hundred ninety-thousand ($490,000.00) dollars at present. The Respondent has been able to contribute large monthly amounts of money to her retirement.

The Court further finds that the Petitioner would be unable to have paid the alimony in the amount of four-thousand ($4,000.00) dollars per month without the aid of his current wife, Cindy Williams.

The Court further finds that the alimony award of four-thousand ($4,000.00) dollars per month shall be reduced to two-thousand ($2,000.00) dollars per month. The Court further finds that the reduction shall be retroactive to July of 2001. The Court further finds that the Petitioner's income along with his current wife's income establish the ability to pay alimony in the amount of two-thousand ($2,000.00) dollars per month.

The Court further finds that the Respondent is not precluded from seeking an increase in the amount of alimony if her health changes. The Court further finds that it shall make no finding in regard to the petition for civil contempt filed by the Respondent.

**IT IS THEREFORE ORDERED, ADJUDGED AND DECREED** that the Petitioner having proven a substantial and material change in circumstances is entitled to a reduction of child support from the amount of four-thousand ($4,000.00) dollars per month to two-thousand ($2,000.00) dollars per month.

**IT IS FURTHER ORDERED** that the reduction shall be retroactive to July, 2001.

**IT IS FURTHER ORDERED** that the Respondent is granted a revised arrearage judgment in the amount of five-thousand seven-hundred-fifty ($5,750,00) dollars which remains as an arrearage in alimony after the Petitioner is given credit for past arrearage payments and over payment of two-thousand ($2,000.00) dollars per month since July 2001 based on the above ruling.

**IT IS FURTHER ORDERED** that the Petitioner shall pay the sum of five-hundred ($500.00) dollars per month towards to arrearage until the arrearage judgment is paid in full.

**IT IS FURTHER ORDERED** that the Respondent is not precluded from seeking an increase in alimony upon a change in her health status.

On April 16, 2003, Cathy Williams filed a Petition to Increase Alimony based upon allegations that she suffered from multiple sclerosis and that her physical condition had worsened to the extent that she was required to take disability leave from her work on February 27, 2003. She asserted that the economic results of her disability status reduced her income from approximately $90,000 per year to $36,000 per year and that the cost for treating her medical condition had dramatically increased. On May 16, 2003, Rodney Williams answered this Petition with general denials and reasserted a lack of need of Cathy Williams and his own inability to pay increased alimony. On November 7, 2003, Cathy Williams filed a Motion to Continue Trial of the Case from December 10, 2003, because of her need for additional discovery and the procurement of expert testimony. She further moved for the trial court to recuse itself and reassign this case to the Eighth Circuit.

An order was entered on December 2, 2003, which provided that "upon request of the plaintiff by motion on November 21, 2003 this case shall be transferred along with the majority of Second Circuit cases to the Eighth Circuit Court. The December 10, 2003, hearing is continued by agreement to be reset in the Eighth Circuit Court." On December 10, 2003, the trial court filed a Memorandum Opinion and Final Order concerning all matters heard on July 31, 2002. This Order reasserted the reduction in alimony from $4,000 monthly to $2,000 monthly and disposed of a contempt petition along with other minor adjustments to the previous order. On December 15, 2003, the record shows a motion in the Eighth Circuit Court for Davidson County by Cathy Williams to "set this cause for final hearing at a certain period." On January 5, 2004, Cathy Williams filed her

Notice of Appeal from the Final Judgment of the Second Circuit Court for Davidson County of December 10, 2003.

So it is that the history discloses:

1. The first Petition for Reduction of Alimony filed by Rodney Williams was heard in the trial court on January 20, 1999, and resulted in a February 3, 1999, Order of the trial court reducing Rodney Williams's alimony obligation from $4,000 per month to $2,500 per month.
2. Appeal from this Order by Cathy Williams resulted in the judgment of this Court issued June 27, 2000, reversing the reduction of alimony and restoring it to $4,000 per month retroactive to February 1999.
3. Rodney Williams's second Petition Seeking a Reduction of Alimony was heard in the trial court on July 31, 2002, and resulted in the trial court's ultimate Memorandum and Order of December 10, 2003, reducing the alimony award payable by Rodney Williams from $4,000 per month to $2,000 per month retroactive to July 2001.

The April 16, 2003, petition of Cathy Williams to increase alimony based upon her disability from multiple sclerosis was transferred to the Eighth Circuit where it remained pending as of the time of the Notice of Appeal and is not before this Court for adjudication.

In this second appeal of this case which we will call *Williams II*, Cathy Williams as Appellant asserts the only issue to be:

Whether the trial court erred in finding that a substantial and material change of circumstances had occurred which justified reducing Husband's alimony obligation from $4,000.00 per month to $2,000.00 per month.

As of the time of the hearing on the present Petition for the Reduction of Alimony on July 31, 2002, the only significant, substantial and material change of circumstances that had occurred was the substantial reduction in income of Rodney Williams. When the parties were divorced on January 9, 1995, Mr. Williams's actual income for that ensuing year was $165,149, though this Court in its opinion of June 27, 2000, following the appeal in *Williams I* used the figure of "approximately $143,419.13."

The trial court in *Williams I* made it clear that its first reduction in the husband's alimony obligation was not based on any reduced income of the husband as of the date of the February 3, 1999 Order of the trial court. As to this factor, the trial court "assumed that Husband would quickly find another job, and that his income would remain at essentially the level it was at the time of the divorce." Holding this assumption by the trial court to be a finding of fact, this Court in *Williams I* held that "the evidence does not preponderate against this finding."

Nothing has changed as to the *Williams I* holding of this Court that an increase in income by an alimony recipient is not enough without more to warrant a reduction in alimony. Indeed, as of July 31, 2002, nothing had changed since *Williams I* except the substantial reduction in income of Rodney Williams. The determinative question before the Court in the instant appeal is the effect of this substantial reduction in income upon the ability of Rodney Williams to pay $4,000 per month in alimony.

In determining that Mr. Williams' earning capacity had been reduced to $90,000 per year, the trial court relied on the testimony of the expert witness Thomas Harold Lucas called as a witness by Ms. Williams. This witness testified in pertinent part:

> Q. All right. Are you familiar with other car dealerships in the Middle Tennessee area, both GM products and other products, in terms of what three pay their employees?
>
> A. Very well.
>
> Q. And are you aware of whether or not there are other jobs available in Middle Tennessee, in the car dealer field, in the range of $125,000 to $150,000, per year, for a manager, sales managers, general managers?
>
> A. Depends on who you want to work for.
>
> Q. Is the answer yes, there are some jobs available?
>
> A. There are jobs that pay that and more.
>
> Q. All right. Do you consider Mr. Williams a talented or skillful sales manager or general manager?
>
> A. I would say his manager skills are above average.
>
> Q. Is he a good salesman?
>
> A. That's not a fair question. I would say at one time he was a very good salesman. I think all of our skills deteriorate when we don't use them as much.
>
> Q. For a general manager – – general sales manager – – is that person's income dependent on the profits of the dealership?
>
> A. Most every dealer bases it on either the variable profit or the profit of the dealership.

Q. And does Mr. Williams, as your former employee, do you know if he has the ability to earn different amounts, based on where he would work?

. . .

Q. Mr. Lucas, you have testified about that you are aware of and familiar with other sales manager or general manager positions available in Middle Tennessee; correct?

A. Yes.

Q. That were paying $125,000 to $150,000 range.

A. Yes.

Q. And I don't mean pay in terms of salary, but where the employee could expect to earn that amount.

A. Expect to earn that much, yes.

Q. From your experience with Mr. Williams, does he have the skills and talent and abilities to fill a position at that income level?

. . .

THE COURT: . . . I guess maybe what would be fair to ask is what kind of skills does one have to have to earn more money? I mean, what kind of skills does one need to earn $120,000 or more than that?

THE WITNESS: Your Honor, sometimes it is not – – doesn't depend on the skills, so much as the opportunity and the willingness to do whatever it takes to do the job.

THE COURT: Um-hum (affirmative response.)

THE WITNESS: There are many opportunities in Middle Tennessee, some better than others. Some I would consider less than honest opportunities.

THE COURT: Less than honest opportunities?

THE WITNESS: Less than honest. There are opportunities with organizations like the Reed organization, that would – –

THE COURT: The what?

THE WITNESS: The Reed organization, that would require, probably, a track history over the last six or eight years, usually at one location, where they have proven themselves in a particular field.

THE COURT: Um-hum (affirmative response.)

THE WITNESS: But as far as the opportunity to go out and apply for a sales manager or general sales manager job in Nashville, I think most of them would make less than $125,000 a year.

THE COURT: Would make less?

THE WITNESS: Yes.

THE COURT: Uh-huh (affirmative response).

THE WITNESS: As a matter of fact, I would say the average would be closer to ninety.

THE COURT: Ninety?

THE WITNESS:     For a sales manager in Nashville.

The trial court found following the July 31, 2002, hearing that:

> Mr. Williams' earning capacity was around the $120,000.00 mark, but it had fluctuated. By the time of the 2002 hearing, it had settled at the $90,000.00 mark. There was testimony by car dealers and employees that one could no longer make the $165,000.00; thus, the court found that in 2002, Mr. Williams could not earn that amount through no fault of his own.

The evidence does not preponderate against this finding of fact by the trial court.

This Court has discussed at length the factors to be considered in determining whether or not a substantial material change in circumstances has occurred to warrant a modification in alimony. *See Sannella v. Sannella*, 993 S.W.2d 73 (Tenn.Ct.App.1999); *Watters v. Watters*, 22 S.W.3d 817 (Tenn.Ct.App.1999). Subsequent to *Sannella*, the Supreme Court further elaborated on these factors in the context of the voluntary retirement of the obligor spouse. *Bogan v. Bogan*, 60 S.W.3d 721 (Tenn.2001). While disagreement may still exist as to which factor is of primary significance, *Sannella*, 993 S.W.2d at 76, especially in light of *Bogan*, when modifying an award of spousal

-12-

support, the factors of obligee need and obligor ability to pay are still the prime considerations. *Bogan* at 730.

In general summary, this Court has said:

Tennessee Code Annotated section 36-5-101(d)(1)(A), as construed in *Storey v. Storey*, 835 S.W.2d 593 (Tenn.Ct.App.1992) and in *Watters v. Watters*, 22 S.W.3d 817 (Tenn.Ct.App.1999), relies heavily upon earning capacity as the yardstick for measuring without regard to the circumstances surrounding actual employment. The strict application of *Storey* and *Watters* must be tempered by the decision of the Supreme Court in *Bogan v. Bogan*, 60 S.W.3d 721 (Tenn.2001).

It is well settled that a court may not modify a spousal support award unless it first finds that a substantial and material change in circumstances has occurred since the entry of the original support decree. *Bogan* at 727-8; *See* Tenn. Code Ann. § 36-5-101(a)(1) (Supp. 2000). Generally, a change in circumstances is considered to be "material" when the change (1) "occurred since the entry of the divorce decree ordering the payment of alimony," *Watters v. Watters*, 22 S.W.3d 817, 821 (Tenn. Ct. App. 1999) and (2) was not "anticipated or [within] the contemplation of the parties at the time they entered into the property settlement agreement," *Id.; see also McCarty v. McCarty,* 863 S.W.2d 716, 719 (Tenn. Ct. App. 1992); *Elliot v. Elliot,* 825 S.W.2d 87, 90 (Tenn. Ct. App. 1991). Moreover, a change in circumstances is considered to be "substantial" when it significantly affects either the obligor's ability to pay or the obligee's need for support. *See Bowman v. Bowman,* 836 S.W.2d 563, 568 (Tenn.Ct.App.1991).

*Lamberson v. Lamberson*, No. M2002-02773-COA-R3-CV, 2004 WL 170388 (Tenn.Ct.App.2004).

Based upon the annual income of Rodney Lee Williams in *Williams I* ($143,419.13), the sum of $4,000 per month as alimony *in futuro* was approximately 33 percent (33%) of his gross income. His gross income at the time of the July 31, 2002, hearing was $90,000 per year. An alimony obligation of $4,000 per month would constitute approximately 53 percent (53%) of the gross income of the obligor.

While Ms. Williams asserts that as of the July 31, 2002, hearing, she had been diagnosed with multiple sclerosis, she was still at that time fully employed and earning $90,000 per year. In *Williams I*, it was correctly held that an increase in income by Mrs. Williams, in and of itself, does not warrant a reduction in the alimony obligation of Mr. Williams. *See McCarty v. McCarty*, 863 S.W.2d 716 (Tenn.Ct.App.1992). When, however, this stability of increased income of Mrs. Williams continuing unabated since the time of *Williams I* is considered in conjunction with the dramatic reduction in the income of Mr. Williams, it is evident that a substantial change in circumstances has occurred which is primarily the result of the reduced income of Mr. Williams.

Events alleged in Ms. Williams' April 16, 2003 Petition to Increase Alimony are not before this Court at this time. As of the date the Notice of Appeal was filed, that Petition remains to be adjudicated in the Eighth Circuit Court of Davidson County. It remains for the trial court to determine the effect of the alleged disability and deteriorating physical condition of Mrs. Williams drawn in issue by the April 16, 2003, Petition. Based on the record before this Court on the appeal in *Williams II*, the judgment of the trial court of December 10, 2003, is in all respects affirmed with costs of appeal assessed to the appellant, Cathy Lee Williams. The case is remanded to the trial court for such further proceedings as may be necessary and proper.

_____
WILLIAM B. CAIN, JUDGE