IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
JUNE 17, 2008 Session

## CATHY LAKELAND ALLEN v. JOHN FOX ALLEN, JR.

**An Appeal from the Chancery Court for Shelby County**
**No. 00-0092-3      Kenny W. Armstrong, Chancellor**

_____

**No. W2007-02224-COA-R3-CV - Filed December 10, 2008**
_____

This is a petition to modify alimony. In the parties' divorce decree, the husband was ordered to pay the wife alimony *in futuro* based in part on the wife's chronic, incurable health condition. About six years later, the husband filed this petition to reduce or terminate his alimony obligation, arguing that (1) the wife's health condition had not declined as was originally anticipated, and (2) his income had decreased and the wife's income had increased. The trial court denied the husband's petition, concluding that a material change in circumstances had not occurred. The husband now appeals. We affirm, concluding that the trial court did not err in finding that the husband did not prove a material change in circumstances and in denying his petition to modify his alimony obligation.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court is Affirmed**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and WALTER C. KURTZ, SR. J., joined.

Larry Rice and Rachel Gallant, Memphis, Tennessee, for the appellant, John Fox Allen, Jr.

Mitchell D. Moskovitz, Adam N. Cohen, and Zachary M. Moore, Memphis, Tennessee, for the appellee, Cathy Lakeland Allen.

### OPINION

On June 27, 2000, Plaintiff/Appellee Cathy Lakeland Allen ("Wife") was granted a divorce from Defendant/Appellant John Fox Allen, Jr. ("Husband").[1] Because the issue in this appeal relates only to Wife's alimony award, we focus on the facts and proceedings pertaining to that issue.

At the time of the divorce trial, Husband and Wife were 49 years old and 43 years old, respectively, and had been married about fifteen years. Husband had completed three years of

---

[1] This is the second appeal in this case. The background facts are set out in our first decision, *Allen v. Allen*, W2000-01844-COA-R3-CV, 2001 WL 687078 (Tenn. Ct. App. June 11, 2001).

college, but he never obtained a degree. During the majority of the parties' marriage, Husband worked as a finance manager for automobile sales at local automobile dealerships earning between $70,000 and $80,000 annually. Two months before Wife filed her complaint for divorce, Husband voluntarily left his employment as a finance manager and accepted employment as a loan originator with First Horizon, a division of First Tennessee Bank, earning between $40,000 and $50,000 annually. At the trial, Husband testified that he would earn between $40,000 and $50,000 during his first year with First Horizon, but after being there for two or three years, he had the potential to earn between $60,000 and $80,000 per year.

Wife holds a bachelors of science degree in office administration. During the marriage, Wife primarily worked as an administrative assistant for various businesses, earning at most $30,000 per year. Approximately a year before the divorce, Wife accepted a position as the concierge of the Plaza Club for Blues City Baseball with the Memphis Redbirds baseball team, earning $38,000 per year.

In 1990, five years after the parties were married, Wife was diagnosed with lupus, an immune system disorder. Wife's lupus was classified as moderately severe. She is required to take numerous medications to control her lupus, and the condition has necessitated her taking leaves of absence from her employment. At the divorce trial, Wife's physician, Lowell B. Robison, M.D. ("Dr. Robison"), testified that Wife's condition would "very likely get some worse over the years," but he could not predict how much worse.

After the divorce trial, the trial court found that Husband was voluntarily underemployed and imputed to him an annual income of $70,000. Based on this amount, the court ordered Husband to pay Wife alimony *in futuro* initially in the amount of $1,300 per month, increasing to $1,800 per month when the parties' son no longer resided with Wife.[2]

After the trial court entered the divorce decree, Husband filed his initial appeal arguing, *inter alia*, that the trial court erred in awarding Wife alimony *in futuro* rather than rehabilitative alimony. **Allen v. Allen**, No. W2000-01844-COA-R3-CV, 2001 WL 687078 (Tenn. Ct. App. June 11, 2001). The appellate court upheld the alimony award. It affirmed the trial court's finding that Husband was voluntary underemployed, commenting that, if Husband was unable to pay the alimony, "it is because [Husband] is voluntarily underemployed." *Id.* at *4. The appellate court noted the trial court's implicit threshold determination that rehabilitation for Wife was not feasible and quoted at length the trial court's analysis:

> I have taken into account the relevant earning capacity, obligations, needs, and financial resources of these parties, including their incomes from pension, profit sharing, retirement plans, and all other sources.

---

[2]The original decree set the increase to take effect either twelve months after entry of the decree or when the parties' son moved out, whichever was later. The parties' son moved out of Wife's residence in July 2006. Accordingly, Husband's alimony obligation increased from $1,300 per month to $1,800 per month at that time.

I'm also considering the relative education and training of each party, and the ability and opportunity of each of these parties to secure any additional education and training and necessity.

I'm also considering the duration of the marriage, the age and mental condition of each of the parties. And I find that the mental condition of the wife has been considerably adversely effected by these proceedings, and by the conduct of her husband. I also find that her physical condition, in considering that, is substantially worse than her husband's, who has none.

And I'm going to take into account her disability and inability, because of a chronic debilitating disease, and more particularly on that, I find this: While she's functioning at a certain level right now, her rheumatologist, Dr. Robinson [sic], on Page 10 of his deposition, Line 18: "If you consider the overall prognosis, discontinuing these fluctuations that are likely to occur, it certainly is not going to-" this is the answer "-is not going to get any better, and very likely will get some worse over the years. I can't predict the degree of worse, though." Now, that is a very telling statement.

In his deposition, he also points out that during these ten years she has never had the benefit of a remission. In essence, what he says is she's just going to get worse. Further on in his testimony, he testifies ... that in his opinion, she has a moderately severe case of Lupas (sic). Her prognosis is not good.

*Id.* at *5-6. Like the trial court, the appellate court relied specifically on the testimony indicating that Wife's lupus would very likely get somewhat worse, which could impact her ability to work. However, the appellate court recognized that, at the time of trial, the condition was not adversely affecting Wife's work schedule. *Id.* at *5. The appellate court observed that "Lupus has no known cure, but patients who respond well to treatment and medication can lead active, healthy lives." *Id.* Overall, the appellate court found that "the trial court properly considered the relevant factors" in concluding that rehabilitation for Wife was not feasible, and it concluded that the award of alimony *in futuro* was supported by the evidence. *Id.* at *6.

Less than a year later, on May 16, 2002, Husband filed a petition to reduce or eliminate his alimony obligation. In his petition, Husband cited as a change in circumstances the fact that, in 2001, he earned only $52,000 due to a restructuring of his pay by his employer. On November 4, 2002, Wife filed a motion to dismiss the petition. Husband subsequently indicated that he would dismiss his petition, and the trial court ordered Husband to reimburse Wife for her attorney's fees, costs, and lost wages resulting from his petition.

On July 20, 2006, Husband filed a second petition to modify his alimony obligation, again alleging a substantial and material change in circumstances.[3] He argued that his income had declined significantly, and that Wife's health and income had "significantly exceeded the expectancy of the Court when the Final Decree of Divorce was entered." In Wife's response to Husband's petition, she conceded that her income had increased slightly, but maintained that her health was essentially unchanged since the divorce decree was entered. She attached to her response an affidavit of Dr. Robison in which he stated, "[Wife's] condition associated with her systemic lupus erythematosus has remained virtually the same since my original diagnosis in 1990."

On January 4, 2007, the trial court conducted a hearing on Husband's petition to modify alimony. The trial court heard testimony from both Husband and Wife. Husband told the trial court that he was still working at First Horizon, a division of First Tennessee Bank, as a loan consultant, the same position he held at the time the divorce decree was entered. In 2005, he earned $100,000, but in 2006, he earned only $83,000. Husband attributed his decrease in income to a variety of factors, including a contraction in the market, a rise in interest rate earnings, and a change in the Bank's commission structure.[4] With his decrease in earnings, an unexpected tax lien levied against his 2006 income, and in light of his other general living costs, Husband said that he had become delinquent on some of his bills and struggled to make his monthly car note, utilities, and rental payments. He acknowledged owning two cars and a motorcycle, but claimed that he owed the motorcycle and one of the cars to his lawyer for his legal fees, and that he had no equity in the other vehicle. He said that his rent, car payments, and gas expenses had increased since the divorce, while other expenses such as groceries and motorcycle insurance had decreased.

At the time Husband filed his petition, he was not certain about the amount of Wife's income. He learned through discovery that she was earning about $10,000 more per year than she was earning at the time of the divorce. It was Husband's understanding that the trial court had based the alimony award on the assumption that Wife's health would decline. Husband said that he was aware that Wife had been working additional hours and had taken on a second job at the Redbirds stadium at night, and consequently gathered that her condition had not in fact worsened. He had not reviewed Wife's medical records since the divorce.

Wife also testified. She said that, at the time of the divorce, she was earning about $38,000 per year working for the Redbirds. At the time of the hearing, she was earning about $48,600 per year working as the Redbirds Season Ticket Manager. Wife indicated that her health was unchanged from the time the divorce decree was entered; she still suffered from severe to moderate lupus, still took five medications for this condition, and still had to miss work at times due to her condition.

---

[3]Husband's petition was filed in response to Wife's petition for civil and criminal contempt against Husband related to Husband's failure to make his June alimony payment and to procure life insurance. In August 2006, the trial court entered a consent order dismissing Wife's petition for contempt.

[4]One of Husband's co-workers testified that, just in the previous five years, there had been fourteen to sixteen commission cuts, and that their employer implemented a new commission structure for 2007 that would mean a twenty to twenty-five percent reduction in Husband's earnings from his income in 2006.

She continued her monthly visits to see Dr. Robison, the same physician who was treating her at the time of the divorce.

Wife testified that she was current on all of her bills. She owned a house and had refinanced the note to accelerate the mortgage by ten years. She bought a Chevrolet Tahoe for herself and, with her son, bought a Tracker. Wife's other expenses included tithing $300 per month to her church, dog daycare, and expenses necessary to care for her mother. Since the divorce, Wife had bought herself a fur coat for $2,950, and had given about $20,000 to $30,000 in furniture and other items to Goodwill, to her son, and to a women's shelter.

On January 30, 2007, the trial court entered an order denying Husband's petition to modify his alimony obligation. It made the factual finding that Wife's medical condition had not changed since the original divorce trial and, consequently, "as a matter of law that there cannot be a substantial and material change of circumstances since the entry of the Final Decree of Divorce that would permit the Court to modify the award of alimony of Wife." The trial court later entered a final order awarding Wife $3,500 in attorney's fees attributable to Husband's petition. The trial court indicated that Husband owed Wife a total of $8,100 in the form of unpaid attorney's fees and alimony arrearages through January 30, 2007, and ordered Husband to pay Wife $100 per month toward this debt. From this order, Husband now appeals.[5]

On appeal, Husband argues that the trial court erred in concluding that he had not shown a material change in circumstances. Husband contends that a material change in circumstances can arise from the non-occurrence of a predicted event, which is what happened in this case. He asserts that the trial court's initial alimony award was based on the prediction that Wife's lupus would get worse. Because her health has not worsened, as predicted, a substantial and material change in circumstances has occurred to justify modification of the alimony award. In addition, he argues, the parties' financial positions have changed significantly since the divorce. Husband's income is declining and he is unable to pay all of his necessary expenses, while Wife's income has increased and she is able to afford luxuries, such as a fur coat and automobiles. Her net worth has increased, while his has decreased. Thus, Husband argues, a substantial and material change in circumstances has occurred with respect to his ability to pay and Wife's need for continued alimony payments.

In response, Wife argues that nothing has changed since the divorce and that, consequently, Husband is not entitled to a modification in his alimony obligation. Furthermore, she argues, Husband's assertion that the trial court premised its alimony award on the prediction that Wife's condition would worsen is simply inaccurate. Rather, the trial court considered "the relevant factors [in] section 36-5-101(d)(1) of the Tennessee Code" in making its alimony award. *Allen*, 2001 WL 687078, at *6. Therefore, she argues, the trial court's decision should be affirmed.

Modification of an alimony award is factually driven, calling for the careful balancing of many factors. ***Bogan v. Bogan***, 60 S.W.3d 721, 727 (Tenn. 2001) (citations omitted). The trial

---

[5]On September 2, 2008, this Court remanded the case to the trial court for the limited purpose of permitting Husband to obtain a final appealable order. The record has since been supplemented to include a copy of the final order obtained by Husband.

court is given wide latitude, and its decision will not be disturbed unless it is "not supported by the evidence or is contrary to the public policies reflected in the applicable statutes." *Id.* The Supreme Court of Tennessee has explained:

> Because modification of a spousal support award is factually driven, a trial court's decision to modify its award is given wide latitude within the trial court's range of discretion. *See Watters v. Watters*, 22 S.W.3d 817, 821 (Tenn. Ct. App. 1999). A trial court abuses its discretion only when it " 'applie[s] an incorrect legal standard, or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining.' " *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001) (quoting *State v. Shirley*, 6 S.W.3d 243, 247 (Tenn. 1999)). We shall presume the correctness of the trial court's factual findings so long as the evidence does not preponderate against them. *See* Tenn. R. App. P. 13(d); *Crabtree v. Crabtree*, 16 S.W.3d 356, 360 (Tenn. 2000). However, we review the trial court's conclusions of law under a de novo standard with no presumption of correctness. *See Burlew v. Burlew*, 40 S.W.3d 465, 470 (Tenn. 2001).

*Perry v. Perry*, 114 S.W.3d 465, 466-67 (Tenn. 2003). The need of the recipient spouse and the obligor's ability to pay remain the most important factors in making an initial determination of alimony; the initial award may be modified only upon a showing of a substantial and material change in circumstances. *Wright v. Quillen*, 83 S.W.3d 768, 772 (Tenn. Ct. App. 2002). The party seeking modification has the burden of proving that the requested modification is justified. The change in circumstances must have occurred after the original award and must be a change that was not contemplated at the time of the divorce. *Id.*

Husband first argues that the trial court erred in determining, as a matter of law, that the failure of predicted circumstances could not constitute a material change in circumstances. He cites language in this Court's opinion in Husband's first appeal, quoting the trial court's summary of Dr. Robison's testimony. The trial court found from Dr. Robison's testimony that, although Wife was "functioning at a certain level right now," her condition, in the words of Dr. Robison, "is not going to get any better, and very likely will get some worse over the years." *Allen*, 2001 WL 687078, at *5-6. Because Wife's condition in fact remained unchanged, Husband argues, the premise of the trial court's decision proved to be untrue, and the failure of this predicted circumstance to occur constitutes a material change in circumstances justifying modification of his alimony obligation.

Husband's argument is grounded on the postulate that the trial court's award of alimony was based on a finding that Wife's condition would in fact worsen within a given period of time. We disagree with this assertion. Although Dr. Robison testified that Wife's condition would "very likely get some worse over the years," his rather unspecific prognostication was further qualified by the statement that he could not "predict the degree of worse." *Id.* at *5. Notably lacking in Dr. Robison's explanation of Wife's prognosis was any sort of timetable. Thus, Husband established at the hearing only that Wife's condition had not *yet* worsened. There is no indication in the proof that she is cured, that her condition has improved, or even that her condition in fact will *not* "get

-6-

some worse over the years."[6]   Therefore, we agree with the trial court's finding that Husband had not shown a material change in circumstances with respect to Wife's condition.[7]

Husband also argues that a modification in his alimony obligation is justified because there has been a decrease in Wife's need for the alimony as well as Husband's ability to pay. Husband argues that Wife does not need the alimony because she now earns more money than she was earning at the time of the divorce. He points out that she is able to stay current on all of her bills, owns her home, tithes $300 per month to her church, pays for dog daycare of $175 per month, spends thousands of dollars to support her mother, and provides support for two of her nieces as well. She also financed two vehicles and a fur coat, and has given both money and furniture to charity. Since the divorce, her net worth has increased. Meanwhile, Husband's income has diminished, and he does not own a home, cannot stay current on his bills, and owes more on his cars than they are worth. To make his alimony payments, he has had to borrow from his 401k and take out loans from TitleMax. Therefore, Husband argues, apart from Wife's physical condition, the proof established a substantial and material change in circumstances sufficient to justify a modification in his alimony obligation.

In response, Wife argues that the increase in her income was foreseeable and was not a "material and substantial" change that would justify a modification in her alimony award. Moreover, Wife points out that, contrary to Husband's contention, his income has increased, not decreased, since the time of the divorce, and the anticipated decrease in his income is not a material change that would justify a reduction of her alimony award.

In order to determine whether a material change in circumstances has occurred, we must compare the circumstances as they existed at the time of the divorce with the circumstances at the time Husband filed his petition for modification. The record shows that, at the time of the divorce, Wife was earning $38,000 per year working for the Redbirds. Husband was deemed to be voluntarily underemployed, with an earning capacity of $70,000 per year.[8] By July 2006, when Husband filed his petition to modify, Wife's income had risen to $48,600 per year, and Husband's income had increased to $83,000 per year, each with the same employers they had at the time of the divorce. Thus, as Husband noted, Wife's financial position improved over the six-year period following the divorce. Husband's position, however, has improved as well. The fact that Husband's

---

[6]Conversely, had Wife's condition in fact worsened, it would be difficult for her to seek an increase in alimony based on this fact. Dr. Robison's testimony emphasized the unpredictability of the timetable for progression of the disease.

[7]Thus, we need not decide whether *any* failed predicate could constitute the necessary material change in circumstances to justify a modification in the alimony award. We conclude only that such a predicate was not established in this case.

[8]We note that the finding that Husband was voluntarily underemployed and the finding of his earning capacity, were based on his prior employment as a finance manager for local automobile dealerships, an industry that has contracted considerably since the time of the parties' divorce, and even since the time of the hearing on Husband's petition to modify.

income declined in 2006 to $83,000 from the $100,000 he earned in 2005 does not mean that he is in a worse position than he was at the time of the divorce.[9]

Moreover, the increase in Wife's income of $10,600 over a period of over six years, which amounts to an annual increase of about 4%, was a modest increase that cannot be characterized as unforeseeable at the time of the divorce. In *Wright v. Quillen*, 83 S.W.3d 768 (Tenn. Ct. App. 2002), the wife argued that she should no longer be required to make alimony payments to the husband because of an increase in his income and standard of living. The husband admitted that his employment income had increased over 50%, that he had begun receiving social security benefits, and that he never used the alimony payments made by the wife but had been saving the extra money. The appellate court upheld the trial court's denial of the wife's petition to reduce her alimony payments, holding that a modification based on an increase in the obligee's income "is proper only where the initial alimony award was based on a presumption that the recipient would not continue to increase his/her income through the pursuit of his/her career." *Wright*, 83 S.W.3d at 774 (citing *McCarty v. McCarty*, 863 S.W.2d 716, 720 (Tenn. Ct. App. 1992)). The appellate court observed that the critical issue was whether the increase in the obligee's income was foreseeable. In the instant case, there is no indication in the record that, so long as Wife's physical condition permitted her to continue working, a modest increase in her income was unforeseeable at the time of the divorce. At the hearing on his petition, Husband admitted "that everyone at sometime may receive a cost of living raise or something like that."

Finally, Husband asks the Court to look at the evidence of the alleged decrease in his standard of living and inability to pay his bills, compared to the evidence that Wife refinanced her home, financed two vehicles, and purchased some luxury items for herself. We cannot conclude that this evidence demonstrates a material change in circumstances that occurred since the divorce. In view of the amount of money earned by both parties since the divorce, even considering the substantial alimony payments subtracted from Husband's income, Husband's assertions that he struggles to pay his bills while Wife is able to maintain her standard of living shows only that Wife is better able to manage her funds.[10] Particularly since Wife's physical condition leaves her uncertain as to how long she will be able to continue working, such money management is necessary.

Considering all of these circumstances, we cannot conclude that the trial court erred in determining that Husband did not establish a material change in circumstances. Therefore, we affirm the trial court's denial of Husband's petition to modify.

Wife requests her attorney's fees incurred in this appeal. Whether to award attorney's fees on appeal rests within the sound discretion of this Court. *Archer v. Archer*, 907 S.W.2d 412, 419

---

[9]In the divorce trial, Husband said that he was earning between $40,000 and $50,000 per year, and expected within two to three years to be making between $60,000 and $80,000 per year. *Allen*, 2001 WL 687078, at *1.

[10]We note that the evidence presented at the hearing included testimony indicating that Husband's income is expected to further decrease. Our holding is limited to the evidence of the parties' circumstances as of the date of the hearing.

(Tenn. Ct. App. 1995). Under all the circumstances of this case, we deny Wife's request for attorney's fees in this appeal.

The decision of the trial court is affirmed. Costs on appeal are to be taxed to Appellant John Fox Allen, Jr., and his surety, for which execution may issue, if necessary.

_____
HOLLY M. KIRBY, JUDGE