# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
February 12, 2009 Session

## BRENDA KAY (WOODS) SHOOSTER v. RAYMOND (RAY) GERALD SHOOSTER

**Appeal from the General Sessions Court for Roane County**
**No. 7588A      Dennis W. Humphrey, Judge**

_____

## No. E2008-00877-COA-R3-CV  - FILED MARCH 6, 2009
_____

In this divorce action, the husband appeals the trial court's award to the wife of permanent alimony. In addition, he contends the trial court erred in requiring him to pay the wife's monthly health insurance premiums and to maintain an existing life insurance policy on his life with the wife designated as the beneficiary.  We  affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the General Sessions Court Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR. and D. MICHAEL SWINEY, JJ. joined.

Scarlett B. Latham, Albany, Kentucky, for appellant, Raymond (Ray) Gerald Shooster.

Browder G. Williams, Kingston, Tennessee, for appellee, Brenda Kay (Woods) Shooster.

## OPINION

### I.  BACKGROUND

The parties, Brenda Kay (Woods) Shooster ("Wife") and Raymond (Ray) Gerald Shooster ("Husband"), were married on May 2, 1981.  Wife filed for divorce in July 2005.  At the time of the trial, the couple had been married for 26 years.

During the trial, a conference was conducted, after which the court noted as follows:

The only – the biggest issue we have here is the – her request for the need for alimony. And I think this Court feels that she would be deserving of alimony, even not looking at the fault factor.

Wife is a high school graduate with some college course work. Her work history includes jobs in a machine shop, convenience store, billing office, hardware store, and a mortgage company. In her past jobs, Wife typically earned between $7 to $9 per hour. In 2004, upon obtaining her affiliate broker's license, Wife began selling real estate. Her real estate earnings are commission based.

At the time of trial, Wife testified that she had eleven active real estate listings; however, as of August 30, 2007, she claimed to have made no sales for the year. She denied hiding any income, claimed to have applied unsuccessfully for other employment, and indicated that she was cleaning another realtor's house "[o]nce a week, once every two weeks" to make money to purchase items she needed. Wife opined that she was a good real estate agent and had no plans to discontinue her pursuit of that career. Husband acknowledged that Wife "used to sell a lot of property" when she worked at Crye-Leike, where she spent a lot of time at the office and requested a lot of "floor time" with the company. He complained that Wife's income precipitously declined when she made the voluntary decision to leave Crye-Leike and to go to Appalachian Realty with her friend Susan McCombs.

Wife testified that she has severe allergies and asthma, mitral valve prolapse, high blood pressure, and a genetic tendon disorder for which she had received surgery on her shoulder and wrist. She stated that she has to take shots every week to keep her allergies under control. Wife further noted that she must have mammograms performed every three months to check for recurring breast lumps, as she has already had lumps twice removed from her breasts. Wife admitted that none of these conditions prevent her from working as a realtor.

Husband is also a high school graduate. At the time of the trial, he was employed by Johnson Controls in Athens and was earning approximately $65,000 per year. According to Husband, he was paid $3,768 per month.[1] Additionally, he earned $100 per month as a quality manager of a junkyard.

In 2003, the reported income for the couple was $72,074. Wife's gross income that year was $744 from selling real estate. In 2004, Husband had income of $58,208; Wife reported a gross income of $25,930 from real estate sales. In 2005, the year Wife filed for divorce, her reported gross income dropped to $15,261. Husband's income that year was $66,942. In 2006, during the divorce proceedings, Wife reported gross commissions of only $3,285. Husband earned $61,793 that year. At trial, Husband estimated his post-divorce monthly living expenses would be about $2,000 per month. Wife submitted that her estimated monthly living expenses after the divorce would be $3,456.

---

[1]At trial, Husband stated his monthly income was $3,168, but indicated that was after $600 was deducted to pay on his loans from his 401(k). Those loans have now been paid with proceeds from the sale of the marital residence.

It was ordered by the trial court that most of the marital debt be paid from the sale proceeds of the marital residence after payment of the mortgage balance on the residence.[2]  The closing statement from the sale of the marital residence reflects that the sales price was $209,000.  After payment of the mortgage, the debts recited in the final decree and the costs of the sale, the parties each should have received approximately $34,327.46.

At the conclusion of the trial, the court noted the following in its findings of fact and conclusions of law:

> The fifty-three-year-old wife, whose income as a realtor is minimal, seeks alimony. The husband, 46, earns approximately $70,000 annually.  Considering the statutory criteria, and especially Ms. Shooster's extensive health issues, the court finds that permanent alimony is appropriate and hereby orders such at $1,500 each month.  In addition thereto, Mr. Shooster is Ordered to pay his ex-wife's health insurance premiums, and to maintain the existing life insurance policy of $100,000 with Ms. Shooster as the beneficiary thereon, providing proof every June 1st and every December 1st that such is maintained.

In the Final Decree of Divorce, the trial court held, inter alia, as follows:

> The Court found that both the plaintiff and the defendant are guilty of inappropriate marital conduct, and that they should be declared divorced pursuant to T.C.A. § 26-4-129.
>
> * * *
>
> It is further **ORDERED** by the Court that the defendant shall pay to the plaintiff One Thousand Five Hundred and 00/100 ($1,500.00) Dollars each month as permanent alimony, which will end on the death of either party or the remarriage of the plaintiff; that, in addition, the defendant shall pay the monthly premium cost for health insurance for the plaintiff; and that the defendant shall maintain his existing life insurance policy with Tennessee Farmers Life Insurance Company account #051677, with a death benefit payable to the plaintiff in the amount of One Hundred Thousand and 00/100 ($100,000.00) Dollars.

Final Decree (entered April 14, 2008).  Husband filed a timely appeal.


## II.  ISSUES

1.  Whether the trial court erred in awarding Wife permanent alimony in the amount of $1,500 per month and in requiring Husband to pay the monthly premium on her health insurance.

---

[2]The parties agreed on a distribution of their personal property and no dispute has arisen regarding that issue.

2. Whether the trial court erred in ordering Husband to maintain Wife as a beneficiary on his life insurance policy.

## III. STANDARD OF REVIEW

Our review is de novo upon the record, accompanied by a presumption of correctness of the findings of fact of the trial court, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). A trial court's conclusions of law are subject to a de novo review with no presumption of correctness. *S. Constructors, Inc. v. Loudon County Bd. of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001); *Burlew v. Burlew*, 40 S.W.3d 465, 470 (Tenn. 2001).

## IV. DISCUSSION

### A.

Trial courts have broad discretion in awarding spousal support. *Bratton v. Bratton*, 136 S.W.3d 595, 605 (Tenn. 2004). "Accordingly, '[a]ppellate courts are generally disinclined to second-guess a trial judge's spousal support decision unless it is not supported by the evidence or is contrary to the public policies reflected in the applicable statutes.' " *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001) (quoting *Kinard v. Kinard*, 986 S.W.2d 220, 234 (Tenn. Ct. App. 1998)). The role of an appellate court in reviewing an award of spousal support is to determine whether the trial court applied the correct legal standard and reached a decision that is not clearly unreasonable. *Id.* at 733. Thus, this court gives awards of alimony an abuse of discretion review. *See Bratton*, 136 S.W.3d at 605. If a discretionary decision is within a range of acceptable alternatives, we will not substitute our judgment for that of the trial court simply because we may have chosen a different alternative. *White v. Vanderbilt Univ.*, 21 S .W.3d 215, 223 (Tenn. Ct. App.1999).

A threshold determination for the court in deciding whether to award alimony is the determination of whether the spouse seeking alimony is economically disadvantaged. *Perry v. Perry*, 114 S.W.3d 465, 467 (Tenn. 2003). Once the trial court has found a party to be economically disadvantaged relative to his or her spouse, it must determine the nature, amount, length of term, and manner of payment of the award. *Id.* at 467.

In making an alimony award, the court must consider all relevant factors under T.C.A. § 36-5-121(i)(2005), but the two most relevant factors in determining the amount of alimony awarded are the economically disadvantaged spouse's need and the obligor spouse's ability to pay. *Robertson v. Robertson*, 76 S.W.3d 337, 342 (Tenn. 2002). When considering these two factors, the primary consideration is the disadvantaged spouse's need. *Aaron v. Aaron*, 909 S.W.2d 408, 410 (Tenn.1995); *Watters v. Watters*, 22 S.W.3d 817, 821 (Tenn. Ct. App.1999).

T.C.A. § 36-5-121(2005) provides as follows in part regarding the criteria to be considered in making an award of alimony:

(1) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;

(2) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earning capacity to a reasonably level;

(3) The duration of the marriage;

(4) The age and mental condition of each party;

(5) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

* * *

(8) The provisions made with regard to the marital property as defined in § 36-4-121;

(9) The standard of living of the parties established during the marriage;

(10) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(11) The relative fault of the parties in cases where the court in its discretion, deems it appropriate to do so; and

(12) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

T.C.A. § 36-5-121(i).

T.C.A. § 36-5-121 establishes several different classes of alimony, and reflects a statutory preference for rehabilitative alimony and transitional alimony over periodic alimony. *See also Bratton*, 136 S.W.3d at 605; *Perry*, 114 S.W.3d at 467; *Crabtree v. Crabtree*, 16 S.W.3d 356, 358 (Tenn. 2000). Section 36-5-121(d)(2) states that "[i]t is the intent of the general assembly that a spouse, who is economically disadvantaged relative to the other spouse, be rehabilitated, whenever possible." The purpose of such an award is to encourage and aid the economically disadvantaged spouse in becoming more self-sufficient. *Burlew v. Burlew*, 40 S.W.3d 465, 471(Tenn. 2001). However, this statutory preference does not displace other forms of spousal support when the

circumstances warrant long-term or more open-ended support. T.C.A. § 36-5- 121(d)(3). *See also* *Aaron*, 909 S.W.2d at 410; *Anderton v. Anderton*, 988 S.W.2d 675, 682 (Tenn. Ct. App. 1998). T.C.A. § 36-5-121(d)(3) provides that when the disadvantaged spouse is not capable of economic rehabilitation sufficient to support a reasonable standard of living under the circumstances, the court may award long-term spousal support.

There are four types of alimony to be awarded to an economically disadvantaged spouse: rehabilitative alimony, transitional alimony, alimony in futuro, and alimony in solido. Each type addresses a specific need. Rehabilitative alimony is temporary support intended to assist the economically disadvantaged spouse in obtaining the education or training necessary to allow him or her to achieve a reasonable standard of living in comparison to the standard of living maintained by the parties during the marriage, or to the post-divorce standard of living available to the other spouse. T.C.A. § 36-5-121(e)(1). Where rehabilitation is not necessary, transitional alimony may be awarded to assist the disadvantaged spouse in adjusting to the economic consequences of the divorce. T.C.A. § 36-5-121(g)(1). Alimony in futuro and alimony in solido are long term forms of spousal support. T.C.A. § 36-5-121(f)(1), (h)(1). Alimony in futuro is typically awarded when a spouse is economically disadvantaged, but rehabilitation is not feasible -- i.e., the disadvantaged spouse cannot achieve an earning capacity that will allow him or her to maintain an appropriate standard of living. T.C.A. § 36-5-121(f)(1). This type of alimony is awarded on a "long term basis or until death or remarriage of the recipient" spouse. *Id.* Alimony in solido, on the other hand, is a lump sum award of alimony, but it may be paid in installments over a specific period of time. T.C.A. § 36-5-121(h)(1). Courts typically award this type of alimony to adjust the division of marital property, *Burlew*, 40 S.W.3d at 471, or to assist the disadvantaged spouse in paying attorney's fees. *Koja v. Koja*, 42 S.W.3d 94, 98 (Tenn. Ct. App. 2000).

There are no hard and fast rules for making spousal support decisions and such determinations require a "careful balancing" of the relevant factors. *Miller v. Miller*, No. M2002-02731-COA-R3-CV, 2003 WL 22938950 at *3 (Tenn. Ct. App. M.S., Dec. 10, 2003)(citing *Anderton v. Anderton*, 988 S.W.2d 675 (Tenn. Ct. App. 1998)).

T.C.A. § 36-5-121 requires the courts to take into consideration the different roles spouses may have in a marriage when considering an award of alimony. The statute provides that "[t]he contributions to the marriage as homemaker or parent are of equal dignity and importance as economic contributions to the marriage. Further, where one (1) spouse suffers economic detriment for the benefit of the marriage, . . . the economically disadvantaged spouse's standard of living after the divorce should be reasonably comparable to the standard of living enjoyed during the marriage or to the post-divorce standard of living expected to be available to the other spouse, considering the relevant statutory factors and the equities between the parties." T.C.A.. § 36-5-121(c)(2). Pursuant to the statute, the courts must consider the parties' standards of living during the marriage and post-divorce where one spouse, as the homemaker or parent, has concentrated his or her efforts on the family, while the other spouse has followed a career. *Jackson v. Jackson*, No. W2006-00182-COA-R3-CV, 2007 WL 529928 at *8 (Tenn. Ct. App. W.S., Feb. 22, 2007)(citing *Goodman v. Goodman*, No. M2004-02781- COA-R3-CV, 2006 WL 47359 at *4, 5 n. 2 (Tenn. Ct.

App. M.S., Jan. 9, 2006); *see also Morrow v. Morrow*, No. M2003-02448-COA-R3-CV, 2005 WL 1656825 at *8 (Tenn. Ct. App. M.S., July 14, 2005).

## V. ANALYSIS

### A.

Husband argues that the trial court failed to make a finding that Wife was incapable of being rehabilitated and made no discernable effort to apply the "statutory criteria" to the facts of the case. Husband further contends there was no medical proof offered to establish that Wife had "extensive" health issues which impacted her capacity to work and no evidence in the record establishing a correlation between any health problems of Wife and a need for alimony. Husband asserts that, pursuant to T.C.A. § 36-5-121(g), transitional alimony would have been more appropriate in this case than permanent alimony, because Wife has already furthered her education beyond that of Husband and has obtained a real estate license.

A consideration of the Shoosters' circumstances and the applicable factors enumerated in T.C.A. § 36-5-121(i), particularly Wife's need for support balanced against Husband's ability to provide support, indicates that the trial court did not abuse its discretion when it awarded Wife permanent alimony.

Wife was fifty-three years old at the time of trial and Husband is six years younger. While Wife did not offer any testimony that her medical conditions interfered with her ability to work, Wife has considerable health problems that could significantly impact her productivity. At the time of the divorce, the parties had been married for 26 years, with Wife's major contribution to the marriage being as a homemaker, wife, and mother. Under the facts of this case, the disadvantaged spouse, Wife, is unable to achieve an earning capacity that will permit her to have a standard of living after the divorce comparable to the post-divorce standard of living for Husband. Thus, Wife is not capable of economic rehabilitation sufficient to support a reasonable standard of living. The trial court therefore properly awarded Wife long-term spousal support. T.C.A. § 36-5-121(d)(3) & (f)(1); *see also Anderton*, 988 S.W.2d at 682 ("The statutory preference for rehabilitative support does not entirely displace other forms of spousal support when the facts warrant long term or more open-ended support.").[3]

### B.

---

[3]A benefit of alimony in futuro (or permanent alimony) is that it can be modified in the event of a substantial and material change in circumstances. "An award of alimony in futuro shall remain in the court's control for the duration of such award, and may be increased, decreased, terminated, extended, or otherwise modified, upon a showing of substantial and material change in circumstances." T.C.A. § 36-5-121(f)(2)(A).

The trial court also awarded Wife an additional economic benefit by requiring Husband to pay Wife's monthly health insurance premiums. Pursuant to T.C.A. § 36-5-121(j), the trial court "may direct a party to pay the premiums for insurance insuring the health care costs of the other party, in whole or in part, for such duration as the court deems appropriate." While the Wife's financial need will be reduced by Husband's payment of $348.84 per month for Wife's health insurance, we do not find that the trial court abused its discretion in making this award. *See Kemp v. Kemp*, No. 88-175-II, 1988 WL 116368, at *3 (Tenn. Ct. App. M.S., Nov. 2, 1988) (holding that the receipt of COBRA benefits constitutes a form of alimony).

## C.

Husband additionally argues that the trial court erred in ordering him to maintain a life insurance policy on himself in the amount of $100,000 with Wife as the beneficiary. T.C.A. § 36-5-121(k) authorizes the trial court to require a party to provide life insurance coverage on his own life, designating the other party as beneficiary, in order to secure his alimony obligation. Thus, the award is specifically authorized by statute. It was within the trial court's discretion to award it.[4]

## VI.  CONCLUSION

Based on the foregoing, we affirm (1) the award of permanent alimony to Wife in the amount of $1,500 a month, (2) the award to Wife of payment of her monthly health insurance premiums by Husband, and (3) the order that Husband maintain a life insurance policy on himself in the amount of $100,000 with Wife as the beneficiary. Thus, for the reasons stated herein, we affirm the judgment of the trial court in its entirety. Costs on appeal are assessed to the Appellant, Raymond (Ray) Gerald Shooster. This case is remanded to the trial court for enforcement of the court's judgment and for collection of costs assessed below, pursuant to applicable law.

_____
**JOHN W. McCLARTY, JUDGE**

---

[4]The order requiring Husband to maintain life insurance to secure his alimony obligation is modifiable. *See Young v. Young*, 971 S.W.2d 386, 393 (Tenn. Ct. App.1997).