# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
September 19, 2013 Session

## RENE ANNETTE FIELDS v. JIMMY GLENN FIELDS

### Appeal from the Circuit Court for Hawkins County
### No. 09CV0022     Thomas J. Wright, Judge

_____

### No. E2012-02406-COA-R3-CV - Filed December 27, 2013

_____

This is a post-divorce case. Jimmy Glenn Fields ("Husband") appeals the trial court's order (1) denying his motion for a reduction in alimony and (2) granting the counter-motion of Rene Annette Fields ("Wife") for an increase in alimony. Following a bench trial, the court held that Husband had failed to demonstrate his inability to return to work as a material change in circumstances justifying a decrease in his court-ordered alimony obligation of $1,100 a month. Rather, the court found that the proof demonstrated that Husband had the ability to pay, and that Wife had a need for, increased support. The court increased Husband's obligation to $2,000 per month. We affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed; Case Remanded.

CHARLES D. SUSANO, JR., P.J., delivered the opinion of the Court, in which THOMAS R. FRIERSON, II, J., joined. D. MICHAEL SWINEY, J., filed a separate opinion concurring in part and dissenting in part.

C. Christopher Raines, III, Kingsport, Tennessee, for the appellant, Jimmy Glenn Fields.

Gregory W. Francisco, Kingsport, Tennessee, for the appellee, Rene Annette Fields.

# OPINION

## I.

## A.

In August 2010, Wife was awarded a divorce from Husband on stipulated grounds, ending the parties' 27-year marriage. The parties agreed to an equitable division of their marital property. Spousal support was the central issue at trial. Wife sought $3,400 a month in alimony. The proof showed that during the marriage, Husband was the primary wage earner. He served in the military from 2004 until 2006. After leaving military service, he worked as an independently-contracted engineering supervisor on remote nuclear construction sites. He also performed one or two shows a month as an "Elvis[1] tribute artist." For her part, Wife did not work outside the home during the bulk of the marriage. She had left her lower-level banking position "many, many" years earlier. She had no college degree. At the time of trial, Husband was unemployed, having recently been laid off from his position as a "turnover engineer" with Louisiana Energy System.

The court found that Wife, given her age and lack of recent work experience, could not be rehabilitated. The court stated that "by the time she could achieve financial independence it's time to leave the workforce." The court based Husband's support obligation at the time of trial, in part, on his annual earnings of over $90,000. In addition, Husband received a VA disability benefit of approximately $1,200 a month for a knee injury he sustained during military training in 2005. He underwent reconstructive surgery that year and again in 2007. The court further found that Husband was primarily responsible for the demise of the marriage. The court ordered Husband to pay Wife alimony in futuro of $1,100 per month, the amount of the mortgage payment on the former marital residence which was awarded to Wife. The trial court acknowledged Husband's unemployment, but found that Husband could meet his obligation based on his demonstrated earning potential and ability to find employment. The court entered a "final" order setting alimony, but suggested that the parties negotiate an agreement or return for a hearing on "what the alimony in futuro amount ought to be when [Husband] is back at full-time status."

## B.

Following the divorce, Husband returned to work, being employed from September 2010 through February 2011. In March 2011, he underwent a third knee surgery – this time to replace his previously repaired knee. Thereafter, he did not return to work. In July 2011,

---

[1]Elvis Presley.

Husband completed physical therapy in connection with his most-recent knee surgery. That same month, Husband moved the court to reduce his spousal support obligation. He stated that since his last knee surgery, his physical ability to return to work was uncertain. In response, Wife filed a motion to increase alimony. She submitted that, following Husband's knee replacement and a recovery period, he had the ability to regain his previous employment and salary, but had not done so in an effort to avoid his support obligation.

In November 2011, a one-day bench trial was held on the parties' respective motions. Husband told the court he had made a conscious decision not to return to his previous line of work. He intended to work again, but was unsure as to when he would return to work and what the nature of his next employment would be. Husband testified that, in October 2011, he broke his wrist when he was on a ladder painting and it collapsed under him.

Husband claimed $1,600 in monthly expenses. He alleged that he subsisted on his disability income and was paying alimony with credit card advances. Since the divorce, Wife had worked full-time at $9 to $10 an hour; her earnings averaged $1,400 a month. She had refinanced the home mortgage to obtain an "interest-only" loan in order to keep the marital home. Her monthly expenses averaged $4,795 a month, not including health insurance.

At the conclusion of the proof, the trial court denied Husband's motion to reduce alimony. As previously noted, the court granted Wife's motion to increase Husband's alimony obligation. The court found that "the decisions made by [Husband] relative to his employment are unreasonable and have not been made in good faith." The court specifically found that Husband had not proven his inability to work, "his income is underrepresented on his tax returns and Social Security records, based upon his lifestyle and expenses," and "[Wife's] expenses exceed her income by a significant margin." The court ordered Husband, following a six-month "deferral period," to pay alimony in futuro of $2,000 per month.

Husband filed a motion to alter or amend the judgment. He called the court's attention to a certified "exam note" contained in his V.A. medical record stating the physician assistant's opinion that Husband could no longer do "this amount of weight bearing, . . . ," and "could not possibly work a construction site" because of difficulties with his knee. Husband also presented an affidavit certifying his disability rating at 100% effective March 2011, with an automatic reduction to 40% effective May 2012. Lastly, Husband noted that in March 2012 he had undergone surgery to his right hand. Husband reiterated his position that the documents, together with his most recent surgeries, constituted a substantial and material change in circumstances, *i.e.*, an inability to perform the type of work he performed in the past, thereby justifying a reduction in his alimony obligation.

The court granted Husband's motion to reconsider its factual findings. The court found that Husband had established some level of impairment to his right knee and had undergone surgery to his hand, all of which warranted a temporary reduction in his alimony payments during his recovery from March 2012 to May 2012. Otherwise, the court found that Husband had failed to meet his burden of proving that a downward modification of alimony was in order. The court affirmed its judgment in all respects. The court ordered that Husband's obligation to pay Wife alimony of $2,000 per month was restored effective June 2012. Husband filed a timely notice of appeal.

II.

Husband raises two issues for our review:

> 1. Do Husband's VA disability rating and recent surgeries constitute a substantial and material change that entitles him to a reduction of his alimony in futuro obligation?

> 2. Did the trial court abuse its discretion when it increased Husband's alimony in futuro obligation in view of Wife's testimony that her circumstances had not changed since the parties were divorced?

Wife raises an additional issue of whether she is entitled to an award of her reasonable attorney's fees on appeal based on her contention that the issues raised by Husband are meritless and his appeal frivolous.

III.

A trial court's factual findings are accorded a presumption of correctness, and we will not overturn such findings unless the evidence preponderates against them. Tenn. R. App. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). With respect to legal issues, our review is de novo, with no deference given to the trial court's conclusions of law. Tenn. R. App. P. 13(d); *Campbell v. Florida Steel Corp.*, 919 S.W.2d 26, 35 (Tenn. 1996).

We review matters of spousal support under an abuse of discretion standard. *Richardson v. Spanos*, 189 S.W.3d 720, 725 (Tenn. Ct. App. 2005). Further, the Supreme Court has elaborated:

> Because modification of a spousal support award is "factually driven and calls for a careful balancing of numerous factors,"

> *Cranford v. Cranford*, 772 S.W.2d 48, 50 (Tenn. Ct. App.
> 1989), a trial court's decision to modify support payments is
> given "wide latitude" within its range of discretion, *see*
> *Sannella v. Sannella*, 993 S.W.2d 73, 76 (Tenn. Ct. App. 1999).
> In particular, the question of "whether there has been a
> sufficient showing of a substantial and material change of
> circumstances is in the sound discretion of the trial court."
> *Watters v. Watters*, 22 S.W.3d 817, 821 (Tenn. Ct. App. 1999)
> (citations omitted). Accordingly, "appellate courts are generally
> disinclined to second-guess a trial judge's spousal support
> decision unless it is not supported by the evidence or is contrary
> to the public policies reflected in the applicable statutes."
> *Kinard v. Kinard*, 986 S.W.2d 220, 234 (Tenn. Ct. App. 1998).

*Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001).

IV.

Husband asserts that the trial court erred in denying his motion to modify his alimony obligation. He contends that his knee and wrist surgeries and current VA disability rating constitute a change in circumstances from those existing at the time of the divorce. More specifically, he contends that his most recent "physical setbacks" have prevented his return to work and left him unable to pay his alimony obligation. He asserts a reduction is warranted. In addition, Husband contends that the trial court erred in granting Wife's motion to increase his alimony obligation. We address these issues in turn.

The Supreme Court has set out the law with respect to requests to modify an award of spousal support as follows:

> It is well settled that a court may not modify or terminate a
> spousal support award unless it first finds that a substantial and
> material change in circumstances has occurred since the entry of
> the original support decree. *See* Tenn. Code Ann. §
> 36-5-101(a)(1) (Supp. 2000). In the typical case involving
> modification of spousal support awards, a change in
> circumstances is considered to be "material" when the change
> (1) "occurred since the entry of the divorce decree ordering the
> payment of alimony," *Watters*, 22 S.W.3d at 821, and (2) was
> not "anticipated or [within] the contemplation of the parties at
> the time they entered into the property settlement agreement,"

id. Moreover, a change in circumstances is considered to be "substantial" when it significantly affects either the obligor's ability to pay or the obligee's need for support. *See Bowman v. Bowman*, 836 S.W.2d 563, 568 (Tenn. Ct. App. 1991).

*Bogan v. Bogan*, 60 S.W.3d at 727-28 (additional citations omitted). The *Bogan* Court further observed that "the two most important considerations in modifying a spousal support award are the financial ability of the obligor to provide for the support and the financial need of the party receiving the support." *Id*. at 730.

We quote pertinent portions of the trial court's findings regarding its decision to increase – rather than decrease – Husband's alimony obligation. The court stated:

I had the opportunity to observe you today and see you ambulate around and I don't know if you need the cane because of balance, but you shouldn't need the cane because of the knee replacement, because your knee by definition should be better now than it was before. The wrist surgery to repair the fracture . . . is currently healing and that's keeping you from being able to go back to work. That's certainly understandable . . . . And so you are temporarily disabled but here's the deal. I . . . set the alimony back in . . . 2010. Over a year ago, and at that point in time you were out of work. So the only thing you had coming in was your VA disability. . . . That's why I set it so low, but I also took into account the fact that you had made a significant sum of money within the last twelve months when I set that.

Again, today as I look at your financial situation, the question is ability to pay and in 2010, . . . you weren't back to work right after . . . the divorce and you made over $100,000 in 2010. You've submitted a monthly expense report which indicates that your minimum monthly expenses are about $20,000 a year. That means you had excess income of $80,000 for 2010. You need to be able to pay your alimony and you can pay your alimony I find. And you have the ability to continue to pay this $1100.00 a month alimony based upon your currently living situation, your income that you've earned, your ongoing income of VA disability and therefore I'm not going to reduce the amount that you're currently paying.

I find that you do have the ability to pay and that even though you're temporarily disabled that you will be able to go back to work. You are highly skilled in the construction industry. There's no question about that. You have the ability to earn a substantial amount of money and you can't just quit because you found somebody else that owns their own home and can take care of you. You've got an obligation to [Wife] that she's put twenty-seven years in and then you run off with somebody. I already found that, and at that time I would have gone ahead and awarded more alimony but because you were currently out of a job I didn't. But you're going back to work and you're going back to work as soon as your wrist heals up and if you don't then I guess you're just going to end up coming back to see me and probably end up in jail for willful contempt of court. Your decision that you say you've made not to return to your prior employment the Court finds is unreasonable. You didn't get hurt there. There's no reason to think that you can't go back and do that job.

* * *

In other words, nothing has changed . . . .

* * *

[Y]our ability to pay is higher than what I based it on when I set it at $1100.00, and . . . you have the ability to earn in excess of $100,000 a year and you have expenses of $20,000 a year, so you've got the ability to pay of whole lot more than $12,000.00 or $13,000.00 a year to [Wife]. . . . [S]o I'm going to say that in six months[,] after we've finished healing your wrist fracture and you've had time to find a new project for employment[,] that your alimony is going to increase. It's going to be $2,000.00 a month. That still doesn't make it anywhere close to fair to what she was used to when you all got divorced and what you can afford and what she can't afford, but it makes it more fair. . . .

(Paragraph breaks inserted for ease of reading.)

At the hearing on Husband's motion to alter or amend judgment, the court reviewed Husband's newly obtained VA medical records. The court additionally found, in relevant part, as follows:

> [T]here's no question the [VA] now has him at a forty percent [disability rating], which is not news because we knew that and we knew what his benefit was when we were here last year. We just didn't have the records. What, I guess, is news is that they had him at a hundred percent from March of 2011 to May of 2012. But as my order reflects from last year, I kept his alimony reduced until May of 2012 also, based upon his recuperation from the knee surgery.
>
> The other thing that . . . is new . . . , he had another surgery in March of this year on his wrist, which was broken last year when he was supposedly recovering from his knee surgery and while he was on a ladder and fell off. So . . . I don't think there's a question that there is an impairment level on the right knee.
>
> \* \* \*
>
> But having considered all the new evidence, I just reaffirm that finding that I don't think his physical limitations are preventing him from returning to his prior job, where he was making big money as a supervisor on remote job sites. There's not been any evidence that such jobs are unavailable. There's not been any evidence presented about his attempts to return to work at that level or at any level, actually.
>
> \* \* \*
>
> The Court's previously found – specifically or generally, that his income is under represented on his tax returns and Social Security records, based upon his lifestyle and expenses. I find that still to be true. Nothing that's been presented changes that. As for those three months [March, April, May of 2012] after the wrist surgery, . . . his alimony obligation should be reduced to six hundred dollars per month. . . . [I]n all other respects, prior order of the Court stays in effect and is confirmed.

On our review, we conclude that the trial court accurately summarized and considered the relevant proof in its spousal support determination. The proof showed that in his work as a supervising engineer, Husband was responsible for verifying and inspecting the installation of equipment on construction sites. By the end of the marriage, his reported salary was over $100,000. In addition, Husband continued to receive some $1,200 a month in military disability benefits. As the court found, Husband demonstrated significant earning capacity despite his earlier knee surgeries. Despite being unemployed for some part of 2010, Husband returned to work following entry of the divorce judgment and was still able to earn a significant salary that year. In early 2011, Husband returned to work earning $68 an hour until he left for knee replacement surgery.

At the time of the hearing on his motion to alter or amend, Husband, 56, had remarried, and was living with his spouse in a house she owned. Husband claimed monthly expenses of $1,600. He continued to be unemployed. As the trial court aptly noted, however, Husband presented no evidence of his inability to continue to work in his chosen field whether with his former employer or another company. He asserts only that he "has not received any offers from his previous contractor to return to work." Aside from the conclusion of a VA physician's assistant, based on information Husband supplied, Husband presented nothing to support his conclusion that he is physically unable to return to his former employment following knee replacement surgery and several months of recovery time. In short, as the trial court essentially found, his recent surgeries notwithstanding, "nothing has changed" with respect to Husband's ability to meet his alimony obligation.

Lastly, the evidence does not preponderate against the trial court's decision to grant Wife's motion for increased alimony. When the divorce was granted, the trial court set the initial alimony award based on the amount of money then available to Husband during unemployment. The court emphasized that it fully contemplated increasing alimony when circumstances changed – that is, when Husband regained employment. Husband did just that. He returned to his former position where he earned some $15,000 a month until leaving to have his knee replaced. There is no evidence that he made any effort to return to work again, having apparently decided to remain unemployed indefinitely. At the same time, Wife presented evidence that her monthly expenses continued to far exceed her income. We conclude that the trial court's decision to increase the alimony award was well within its discretion. The initial award clearly contemplated an increase in alimony with Husband's return to his previous employment and receipt of commensurate income. In our view, Husband's "unreasonable" decision not to work at all, as the trial court deemed it, constitutes a changed circumstance that justified an upward modification of the alimony award based on Husband's demonstrated work history and earning capacity.

On our review of the entire record, we conclude that the evidence does not preponderate against the trial court's findings in support of its conclusion that an increase in alimony, rather than a decrease, is warranted. Accordingly, the trial court did not err in denying Husband's motion for a reduction in his spousal support obligation and granting Wife's motion for increased spousal support.

V.

The dissent does not believe there has been a change in circumstances warranting an increase in Wife's support. When the totality of the evidence is viewed in context, we believe there has been a change in circumstances supporting the trial court's decision to increase the amount of support.

The trial court, at the time of the divorce trial, set the initial award of spousal support at a figure significantly lower than Wife's demonstrated need of $3,400 per month. The court did this "to cut Husband some slack" – as the saying goes – because Husband had been recently laid off from his employment and had recently had knee surgery. The court set the figure at the lower end despite the fact that Husband had demonstrated an ability to earn $90,000 a year. In setting spousal support at 32% of Wife's demonstrated need, the court expressly stated its intention to increase support when Husband was "back on full-time status" and following a period of recuperation from his knee surgery.

Fast forward to the hearing on the parties' competing motions to modify. Husband had once again, post-divorce – from September 2010 through February 2011 – earned a substantial salary, *i.e.*, $15,000 a month. We recognize Husband had a statement – not from a physician but from a physician's assistant – saying he could not "work on a construction site" and could not do heavy lifting. In this connection, it must be recognized that Husband was an engineering supervisor, *not a construction worker*. The trial court found that "the decisions made by [Husband] relative to his employment [were] unreasonable and have not been made in good faith." The trial court further found that "based upon his lifestyle and expenses," Husband had "under represented" his income.

No doctor testified that Husband could not work at his previous, high-income-earning occupation. The court recognized that Husband needed a period of time for his wrist fracture to heal and for him to find a "new prospect for employment," so he delayed the imposition of the new spousal support award for six months. When all of this is compared to the fact that, at the time of the divorce, Husband had been recently unemployed and had recently had knee surgery, the evidence clearly preponderates that there has been a change in circumstances since the date of the divorce hearing warranting an increase in spousal support. The change is simply this: at the time of the divorce, Husband had a legitimate reason why

-10-

he could not work; at the time of the modification hearing plus six months, he did not have a good reason for his failure to pursue gainful employment.

## VI.

Wife contends that she is entitled to recover all of her attorney's fees necessarily incurred to defend the award of spousal support in the instant appeal. She concludes that the issues Husband raised are without merit, thereby rendering his appeal frivolous.

The Supreme Court has reminded the courts that "care must be taken . . . to avoid discouraging legitimate appeals. Consequently, imposing a penalty for a frivolous appeal is a remedy which is to be used only in obvious cases of frivolity and should not be asserted lightly or granted unless clearly applicable – which is rare." **Henderson v. SAIA, Inc.**, 318 S.W.3d 328, 342 (Tenn. 2010). Although Husband has not prevailed, we do not find that his appeal is entirely "devoid of merit," *see* **Clark v. Nashville Mach. Elevator Co.**, 129 S.W.3d 42, 50 n.4 (Tenn. 2004), or otherwise deserving of sanctions.

## VII.

The judgment of the trial court is affirmed. Court costs on appeal are taxed to the appellant, Jimmy Glenn Fields. This case is remanded to the trial court, pursuant to applicable law, for enforcement of the trial court's judgment and collection of costs assessed below.

_____
CHARLES D. SUSANO, JR., PRESIDING JUDGE