FILED
08/30/2018
Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
December 6, 2017 Session

**SAFRONIA RUFSHOLM v. JERRY RUFSHOLM**

**Appeal from the Chancery Court for Montgomery County**
**No. MC-CH-CV-D1-15-676     Ross H. Hicks, Judge**

_____

**No. M2016-02404-COA-R3-CV**
_____

This is a divorce action in which the wife appeals the trial court's classification of property and the type and amount of alimony awarded. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which D. MICHAEL SWINEY, C.J. and RICHARD H. DINKINS, J., joined.

Mark R. Olson and Taylor R. Dahl, Clarksville, Tennessee, for the appellant, Safronia Rufsholm.

Kimberly G. Turner , Clarksville, Tennessee, for the appellee, Jerry Rufsholm.

**OPINION**

**I.     BACKGROUND**

Safronia Rufsholm ("Wife") and Jerry Rufsholm ("Husband") were married in October 2000. While no children were born of the marriage, Wife had children from a prior marriage. Husband was retired from the military and drew a military pension prior to the marriage. He later obtained employment through the Veteran's Administration. Wife served as a homemaker and retained various positions of employment, earning at least minimum wage. Wife obtained her Certified Nursing Assistant ("CNA") license but allowed the license to lapse. She was working at a daycare when the Parties separated.

Husband purchased real property, a residence valued at approximately $84,500, prior to the marriage. The property remained titled in his name but was refinanced for

the purpose of reducing the interest rate after the marriage. Wife signed a deed of trust at that time. Another loan of a less amount than the first was secured years later. Wife again signed a deed of trust. Various improvements were made to the property during the marriage.

Throughout the marriage, the Parties maintained separate checking accounts, with the exception of a short period in which the Parties operated a joint checking account that was later closed due to Wife's spending habits. Husband paid all mortgage payments through his military retirement account and ultimately fulfilled the mortgage. Wife, in turn, remitted payment to Husband on occasion for her share of household expenses.

After almost 15 years of marriage, Wife filed a complaint for divorce, alleging irreconcilable differences, inappropriate marital conduct, and cruel and inhuman treatment. Husband agreed that irreconcilable differences existed but denied Wife's claim of inappropriate marital conduct and cruel and inhuman treatment. He did not file a counter-complaint for divorce, but he later claimed that any fault for the demise of the marriage should be attributed to her as evidenced by her domestic assault and destruction of property at the time of their separation.

Wife requested spousal support, and the court awarded temporary support in the amount of $1,000 per month, pending resolution of the divorce. The case proceeded to a hearing. A partial transcript of the hearing was available; however, the Parties filed a statement of the evidence that was approved by the court in lieu of the partial transcript.

At the time of the hearing, Husband was 64 years old and was disabled from service connected disabilities. His net monthly income included retirement from the Army in the amount of $1,434.96; Social Security in the amount of $1,378; and retirement from the Veteran's Administration in the amount of $399. The Parties agreed that any military retirement was earned prior to the marriage but that Wife held an interest in the Veteran's Administration retirement because they were married for the entire duration of his employment. He testified that they maintained separate bank accounts and had only once attempted to share a joint account that was later closed when he discovered that Wife obtained signature loans and credit cards without his consent.

Relative to the events that led to their separation, Wife claimed that Husband "put his hands on" her during an argument the day before the separation. She stated that they argued again the next day and that he sprayed her with pepper spray and hit her with his cane. Husband denied hitting Wife but admitted to using his pepper spray to fend off Wife's physical attacks before he was able to leave and call the police. He claimed that upon his return, he found that Wife had destroyed several large curio cabinets filled with

his collectible eagles and other items. Photographs were entered into evidence documenting the damage.

Wife, who was 60 years old at the time of the hearing, testified that she was living in a camper on her sister's property which shared water and electricity with her sister's home. She has suffered from health issues but is not disabled. While she initially testified that she was not working, she later admitted that she was paid $75 per week for house cleaning services and also received $192 per month in food stamps. She agreed that she was healthy enough to perform housecleaning services for money and that she worked as a cook at a children's day care prior to the separation. She claimed that she was on a waiting list for an employment position in Paris, Tennessee as a sitter for the elderly and children. She was also attempting to renew her CNA license but claimed that her license could not be renewed until the criminal charges relating to the domestic assault were expunged from her record, a process that could take approximately 60 days.

Wife claimed that she provided all of her income to Husband and contributed approximately $800 per month to household expenses, representing payments of approximately $100 or $200 per week. She admitted that she did not always remit payment and that she was not required to "make up" missed payments. Husband denied this fact, claiming that Wife only agreed to give him $100 per week but that she did not always remit payment. He further claimed that he paid all mortgage payments with his premarital retirement funds deposited into his separate account. Wife admitted that she made no payments on the mortgage and did not know the amount of the mortgage payment but claimed that she made payments "in [her] heart." The Parties agreed that they made various improvements to the residence, including painting, finishing the basement, and installing a shed.

Following the presentation of the above evidence, the trial court declared a divorce and further found that it would have awarded the divorce to Husband had he filed a counter-complaint. As pertinent to this appeal, the court classified the residence as Husband's separate property, finding that he purchased the property prior to the marriage and paid all payments with retirement funds earned prior to the marriage. However, the court found that the approximate $20,000 increase in value that occurred during the marriage was a marital asset. The court awarded Wife $8,000 of this increase in value, representing a $2,000 deduction because of her dissipation or destruction of marital assets. The court also awarded her $3,000 for her equitable interest in a shed placed on the property. The court found that an award of alimony in futuro in the amount of $400 per month was appropriate given the division of assets and Husband's increased earning capacity, education and training, and mental condition. The court noted that it considered Wife's fault in determining the appropriate award and anticipated modifying the award

when she was eligible to draw Social Security or obtained suitable employment. This timely appeal followed.

## II.    ISSUES

We consolidate and restate the issues on appeal as follows:

A.    Whether the trial court erred in classifying the residence as Husband's separate property.

B.    Whether the trial court erred in setting the type and amount of support.

## III.    STANDARD OF REVIEW

After a bench trial, we review a trial court's findings of fact de novo with a presumption of correctness unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). We afford great deference to a trial court's credibility determinations because the court is in the best position to observe witnesses and evaluate their demeanor. *Hughes v. Metro. Govt. of Nashville and Davidson Cnty.*, 340 S.W.3d 352, 360 (Tenn. 2011). We review questions of law de novo with no presumption of correctness. *Whaley v. Perkins*, 197 S.W.3d 665, 670 (Tenn. 2006).

Trial courts are vested with a great deal of discretion when classifying and dividing a marital estate. Typically, the court's decision will not be disturbed on appeal unless the decision is contrary to the preponderance of the evidence or is based on an error of law. *Sullivan v. Sullivan*, 107 S.W.3d 507, 512 (Tenn. Ct. App. 2002). Trial courts also have broad discretion in awarding spousal support. *Bratton v. Bratton*, 136 S.W.3d 595, 605 (Tenn. 2004). "Accordingly, '[a]ppellate courts are generally disinclined to second-guess a trial judge's spousal support decision unless it is not supported by the evidence or is contrary to the public policies reflected in the applicable statutes.'" *Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001) (quoting *Kinard v. Kinard*, 986 S.W.2d 220, 234 (Tenn. Ct. App. 1998)). The role of this court in reviewing an award of spousal support is to determine whether the trial court applied the correct legal standard and reached a decision that is not clearly unreasonable. *Id.* at 733. An appellate court must review a trial court's decision regarding alimony using the abuse of discretion standard. *See Bratton*, 136 S.W.3d at 605. If a discretionary decision is within a range of acceptable alternatives, we will not substitute our judgment simply because we may have chosen a different alternative. *White v. Vanderbilt Univ.*, 21 S.W.3d 215, 223 (Tenn. Ct. App. 1999).

# IV. DISCUSSION

## A.

Wife argues that the court erred in classifying the residence as Husband's separate property. She claims that the residence became marital property through the doctrines of transmutation and commingling as evidenced by their refinancing of the property and the fact that the mortgage was fulfilled during the marriage. She argues that even if the mortgage was fulfilled with Husband's military retirement funds, her contributions to the household expenses allowed him to fulfill the mortgage. Husband responds that Wife's name was never placed on the Warranty Deed, that she made no payments on the residence, and that his separate funds were used to fulfill the mortgage. He provides that Wife admitted that she made no monetary contributions to the marital residence and that she only remitted $100 or $200 per week for household expenses and that she was not responsible for missed payments.

"Tennessee is a 'dual property' state because its domestic relations law recognizes both 'marital property' and 'separate property.'" *Larsen-Ball v. Ball*, 301 S.W.3d 228, 231 (Tenn. 2010) (citing *Snodgrass v. Snodgrass*, 295 S.W.3d 240, 246 (Tenn. 2009); Tenn. Code Ann. § 36-4-121). The division of the parties' marital estate begins with the classification of the property as separate or marital; separate property is not part of the marital estate and, therefore, is not subject to division. *Id.* "The classification of property as separate or marital presents a question of fact which must be determined in light of all the relevant circumstances." *Welch v. Welch*, No. M2013-01025-COA-R3-CV, 2014 WL 107982, at *2 (Tenn. Ct. App. Jan. 10, 2014) (citing *Snodgrass*, 296 S.W.3d at 245).

Separate property is not part of the marital estate and is therefore not subject to division. *See Cutsinger v. Cutsinger*, 917 S.W.2d 238, 241 (Tenn. Ct. App. 1995). Separate property includes "[a]ll real and personal property owned by a spouse before marriage." Tenn. Code Ann. § 36-4-121(b)(2)(A). In contrast, marital property includes "all real and personal property, both tangible and intangible, acquired by either or both spouses during the course of the marriage up to the date of the final divorce hearing and owned by either or both spouses as of the date of filing of a complaint for divorce." Tenn. Code Ann. § 36-4-121(b)(1)(A). Marital property also

> includes income from, and any increase in value during the marriage of, property determined to be separate property in accordance with subdivision (b)(2) if each party substantially contributed to its preservation and

appreciation, and the value of vested and unvested pension, vested and unvested stock option rights, retirement or other fringe benefit rights relating to employment that accrued during the period of the marriage.

Tenn. Code Ann. § 36-4-121(b)(1)(B). "[S]eparate property can become part of the marital estate due to the parties' treatment of the separate property." *Eldridge v. Eldridge,* 137 S.W.3d 1, 13 (Tenn. Ct. App. 2002). "The doctrines of transmutation and commingling provide an avenue where separate property can become marital property." *Id.*

This court has stated that

[transmutation] occurs when separate property is treated in such a way as to give evidence of an intention that it become marital property. One method of causing transmutation is to purchase property with separate funds but to take title in joint tenancy. This may also be done by placing separate property in the names of both spouses. The rationale underlying both these doctrines is that dealing with property in these ways creates a rebuttable presumption of a gift to the marital estate. This presumption is based also upon the provision in many marital property statutes that property acquired during the marriage is presumed marital. The presumption can be rebutted by evidence of circumstances or communications clearly indicating an intent that the property remain separate.

*Batson v. Batson*, 769 S.W.2d 849, 858 (Tenn. Ct. App. 1988) (internal citations and quotations omitted). Likewise, "[t]he related doctrine of commingling concerns instances where separate property becomes marital property when the separate property is inextricably mingled with marital property or the other spouse's separate property." *Eldridge*, 137 S.W.3d at 14 (citation omitted).

Here, the residence was owned by Husband prior to the marriage and was his separate property. While we agree with Wife that the refinancing of the residence tends to support a finding of transmutation or commingling, we, like the trial court, cannot ignore the way in which the Parties separated their finances. Husband established a separate account for his military retirement funds and paid all mortgage payments through that account. In turn, Wife remitted $100 or $200 on a weekly basis for general household expenses, when she was able. Wife admitted that she was not responsible for missed payments and had no knowledge of the particulars of the mortgage indebtedness. With these considerations in mind, we affirm the trial court's classification of the residence as Husband's separate property.

B.

Wife argues that the court erred in awarding alimony in futuro given her need for support and Husband's ability to pay. She claims that her limited financial resources, lack of education, and inability to obtain significant employment when compared with Husband's extensive work history, greater income, retirement, and ability to continue earning supports an award of transitional alimony or alimony in solido. Husband responds that the court did not err in setting the type and amount of support.

"Alimony" is defined, in pertinent part, by Black's Law Dictionary, 9th ed., as

[a] court-ordered allowance that one spouse pays to the other spouse for maintenance and support . . . after they are divorced.

Alimony is distinct from a property settlement. Tennessee recognizes four different types of alimony: rehabilitative alimony, transitional alimony, alimony in futuro, and alimony in solido. Each type addresses a specific need. At issue in this case is the trial court's grant of alimony in futuro. Alimony in futuro is a long-term form of spousal support. Tenn. Code Ann. § 36-5-121(f)(1). Alimony in futuro is typically awarded when a spouse is economically disadvantaged, but rehabilitation is not feasible, meaning that the disadvantaged spouse cannot achieve an earning capacity that will allow him or her to maintain an appropriate standard of living. *Id.* This type of alimony is awarded on a "long term basis or until death or remarriage of the recipient" spouse. *Id.* Wife claims that an award of transitional alimony or alimony in solido was more appropriate given the circumstances presented.

Transitional alimony, which is only modifiable in certain circumstances, is awarded "when the court finds that rehabilitation is not necessary, but the economically disadvantaged spouse needs assistance to adjust to the economic consequences of a divorce." Tenn. Code Ann. § 36-5-121(g). This type of alimony "is designed to aid a spouse who already possesses the capacity for self-sufficiency but needs financial assistance in adjusting to the economic consequences of establishing and maintaining a household without the benefit of the other spouse's income." *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 107 (Tenn. 2011). Alimony in solido is a long-term form of spousal support. Tenn. Code Ann. § 36-5-121(h)(1). Alimony in solido is a lump sum award of alimony, but it may be paid in installments over a specific period of time. Tenn. Code Ann. § 36-5-121(h)(1). Courts typically award this type of alimony to adjust the division of marital property. *Burlew v. Burlew*, 40 S.W.3d 465, 471 (Tenn. 2001).

In determining whether to award alimony, the court must first consider whether the spouse seeking alimony is economically disadvantaged. *Perry v. Perry*, 114 S.W.3d 465, 467 (Tenn. 2003). "Once the trial court has found a party to be economically disadvantaged relative to his or her spouse, it must determine the nature, amount, length of term, and manner of payment of the award." *Id.* In setting the type, duration, and amount of support, courts are guided by the following list of factors:

(1)     The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;

(2)     The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earnings capacity to a reasonable level;

(3)     The duration of the marriage;

(4)     The age and mental condition of each party;

(5)     The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

(6)     The extent to which it would be undesirable for a party to seek employment outside the home, because such party will be custodian of a minor child of the marriage;

(7)     The separate assets of each party, both real and personal, tangible and intangible;

(8)     The provisions made with regard to the marital property, as defined in § 36-4-121;

(9)     The standard of living of the parties established during the marriage;

(10)    The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(11)     The relative fault of the parties, in cases where the court, in its discretion, deems it appropriate to do so; and

(12)     Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-5-121(i).  In addition to the factors found in Tennessee Code Annotated section 36-5-121(i), the two most relevant factors in determining the amount of alimony awarded are the economically disadvantaged spouse's need and the obligor spouse's ability to pay.  *Robertson v. Robertson*, 76 S.W.3d 337, 342 (Tenn. 2002).  When considering these two factors, the primary consideration is the disadvantaged spouse's need.  *Watters v. Watters*, 22 S.W.3d 817, 821 (Tenn. Ct. App. 1999).  "There are no hard and fast rules for spousal support decisions, and such determinations require a 'careful balancing' of the relevant factors."  *Miller v. Miller*, No. M2002-02731-COA-R3-CV, 2003 WL 22938950, at *3 (Tenn. Ct. App. Dec. 10, 2003) (citing *Anderton v. Anderton*, 988 S.W.2d 675, 682-83 (Tenn. Ct. App. 1998)).

Here, the court found that the majority of the factors weighed in favor of an award of alimony but that Wife was also at fault for the demise of the marriage.  The court based its award on the fact that Wife would be eligible for Social Security in less than two years and was capable of maintaining employment, thereby necessitating modification of the award in the near future.  The record supports the court's assessment.  In deference to the court's discretion in such matters, we uphold the award of alimony in futuro in the amount of $400 per month.  In so concluding, we remind the Parties that awards of alimony in futuro "remain in the court's control for the duration of such award, and may be increased, decreased, terminated, extended, or otherwise modified, upon a showing of substantial and material change in circumstances."  Tenn. Code Ann. § 36-5-121(f)(2)(A).

## V.     CONCLUSION

The judgment of the trial court is affirmed.  The case is remanded for such further proceedings as may be necessary.  Costs of the appeal are taxed to the appellant, Safronia Rufsholm.

_____
JOHN W. McCLARTY, JUDGE